Filed 7/24/14  P. v. Boyd CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B249472 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA058381) |
| v. | |
| KENDALL K. BOYD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Modified and affirmed.

Doreen Boxer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung Mar and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Kendall K. Boyd appeals from the judgment entered after his conviction of disobeying a criminal protective order (count 1), stalking (count 2), criminal threats (count 3), burglary (count 4), and dissuading a witness (count 5). He argues the court was required to give a unanimity instruction on count 3, the sentence imposed on counts 1 and 5 should have been stayed because the counts were based on the same conduct as count 4, and, alternatively, the sentence on count 5 should have been stayed because the count was based on conduct used to elevate count 1 to a felony. We conclude a unanimity instruction on count 3 was not required, but the sentence on counts 1 and 5 should be stayed. We modify the judgment accordingly and affirm it as modified.

## FACTUAL AND PROCEDURAL SUMMARY

Lasherrill Reeves dated defendant on and off for several years. The relationship was abusive, but Reeves remained intimate with him even after it ended. They had two children together, born in 2003 and 2010. In June 2011, defendant pled no contest to domestic violence under Penal Code section 273.5, subdivision (a),[1] and a criminal protective order was issued against him.

On June 9, 2012, defendant showed up at Reeves's house and refused to leave until she gave him her phone number. After she complied, he left briefly, only to call her on the phone and threaten that if she called the police, he would "make it worth his while if he was going to have to go to jail." He then went back, pounded on the door, and rang the bell until Reeves called the police. Defendant pled no contest to a misdemeanor violation of the protective order, stemming from this incident.

Between June 2012 and January 2013, defendant repeatedly called Reeves. When she changed her phone number, he would show up at her house and demand her new number. When he called her on the phone, he would threaten to "'make [her] life a living hell'" and to "'see [her] dead before [she] took his children out of his life.'" In mid-December 2012, defendant brought gifts for the children. When Reeves reminded him of

---

[1] Statutory references are to the Penal Code.

the protective order and suggested that he obtain a visitation order, defendant said he did not care about the protective order, would not go to court, and would see his children "whenever he felt like it."

On January 8, 2013, defendant had his car towed to Reeves's address. He refused to leave when she asked him to do so and again said he did not care about the protective order. Reeves allowed defendant to visit with the children in the front yard. When she and the children eventually headed back to the house, defendant followed them and insisted that Reeves give him her new phone number. Reeves managed to get herself and the children inside the house, then closed and locked the front door. Defendant started ringing the bell and knocking on the door. Reeves's boyfriend, who also was in the house, told her she needed to make defendant leave.

Reeves opened the front door and told defendant to go away or she would call the police. Defendant put his foot inside the door and again demanded her phone number. After Reeves told him she was not opposed to him visiting the children, but he needed to get a visitation order from the court, defendant became hostile and threatened to have someone beat Reeves up. Defendant also threatened that if Reeves called the police, he would come back in three months and the situation would be "way worse." According to Reeves, defendant either threatened to kill her or threatened "as if" he may kill her. During this exchange, Reeves's boyfriend approached and told defendant to get out. Defendant tackled the boyfriend and ended up in the hallway. When Reeves called the police, defendant ran out. He was arrested less than a half mile from the house.

Defendant was charged with five counts, four of which were expressly based on the January 8, 2013 incident: felony violation of a criminal protective order, with the additional allegations that the violation involved an act of violence or a credible threat of violence and that defendant had a prior conviction for violation of a protective order (§ 273.6, subd. (d), count 1); making criminal threats (§ 422, subd. (a), count 3); first degree burglary, person present (§§ 459, 667.5, subd. (c), count 4); dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1), count 5). In count 2, as amended at trial,

3

defendant was charged with stalking Reeves between June 10, 2012[2] and January 1, 2013. (§ 646.9, subd. (a).) The charges also alleged four prior prison terms. (§ 667.5, subd. (b).)

The jury found defendant guilty as charged and the special allegations true. The court found the prison prior allegations to be true. Defendant was sentenced to a 12-year prison term, comprised of six years on count 4, eight months each on counts 1, 2, and 5, and four years on the prison priors. The sentence on count 3 was stayed under section 654. Defendant was given 180 days of custody credits, and was ordered to pay various fines and fees.

This appeal followed.


## DISCUSSION

### I

Defendant argues the court should have given a sua sponte unanimity instruction on count 3 (criminal threats) because the prosecution had not selected the specific statements that constituted criminal threats. We disagree.

The offense of criminal threats requires a threat of "death or great bodily injury" with the specific intent that the statement be taken as a threat. (§ 422.) A defendant is entitled to a unanimous finding that he is guilty of a specific crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Ibid*.) A unanimity instruction is not required if the acts were so closely connected in time that they form a single transaction, the defendant offers the same defense to each act, and the jury has no basis to distinguish between them. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100.)

In the opening statement, the prosecutor told the jury that on January 8, 2013, defendant threatened to kill Reeves. On direct examination, Reeves identified two

---

[2] As originally charged, this count was based on conduct between June 1, 2012 and January 1, 2013, and Reeves's testimony referenced that period.

specific threats: that defendant would have someone beat her up, and that if she called the police, defendant would come back in three months and "it was gonna be way worse next time." She testified the threats caused her to be afraid for her own safety and the safety of her family. On redirect, the prosecutor asked Reeves whether she believed defendant intended to seriously hurt her and whether he threatened to kill her. Reeves answered both questions in the affirmative. On recross, she agreed with defense counsel's formulation that she "felt as if" defendant may kill her, and that "he was threatening . . . as if he may kill [her]."

In closing, the prosecutor argued defendant "was going to kill [Reeves], he was going to cause her harm, he was going to make her life a living hell." Noting that the threat to make Reeves's life "a living hell" was not made on January 8, 2013, defendant argues the prosecutor failed to make an election, thus requiring the court to give a unanimity instruction sua sponte. Defendant cites *People v. Melhado* (1998) 60 Cal.App.4th 1529, where threats to blow up a repair shop were made during separate confrontations at 9 a.m. and 11 a.m. on the same day. The prosecution notified the court, but did not make clear to the jury, that it had elected to rely on the 11 a.m. event. (*Id*. at p. 1535.) The failure to give a unanimity instruction under those circumstances was prejudicial error. (*Id*. at p. 1539.)

Here, Reeves testified defendant threatened to make her life "a living hell" when he called on the phone during the period between June 10, 2012 and January 1, 2013. She stated she understood the statement to mean defendant would "harass," "bully," and "stalk" her "until he got what he wanted." She did not testify she understood this to be a threat to kill her. Although the prosecutor mistakenly included the "living hell" statement in the closing argument on count 3, that does not mean the People failed to elect or failed to make the election clear to the jury. Both the information and the verdict forms clearly stated that the criminal threats count was based on conduct that occurred "on or about January 8, 2013." The jury was instructed that the attorneys' statements were not evidence, and is presumed to have followed that instruction. (*People v. Harris* (1994) 9 Cal.4th 407, 426.) Significantly, the jury asked for and received a read-back of Reeves's

5

testimony about the events of January 8, 2013, as well as the events occurring between June 10, 2012, and January 1, 2013. Reeves's testimony shows the "living hell" statement was not made on January 8, 2013. Thus, it is unlikely the jury relied on that statement to convict defendant on count 3.

Defendant also argues the prosecutor relied on Reeves's testimony that he threatened to have "some other person come to her home and harm her" and to "return to harm her in 3 months." The record does not support this argument. The prosecutor cited the statement "[i]f you call the police, I'm going to come back and I'm going to make it worse" only in relation to count 5 (dissuading a witness), but not in relation to the criminal threats count. The prosecutor did not mention defendant's threat to have someone else beat Reeves up; rather, she highlighted defendant's physical ability to carry out the threat on his own.

Although the prosecutor appeared to reference multiple threats in closing, only her reference of a threat to kill can clearly be traced to Reeves's testimony about the events of January 8, 2013. Defense counsel addressed his closing to this threat to kill, highlighting the fact that Reeves had not mentioned any such threat in her 911 call. Thus, the defense to count 3 was that no threat to kill was made on January 8, 2013. In rebuttal, the prosecutor challenged that defense, and did not argue to the jury that it could, in the alternative, convict defendant on count 3 based on some other threat.

On this record, we conclude the jury was not presented with multiple criminal acts in support of count 3, and a unanimity instruction was not required.

## II

Defendant argues the terms imposed on counts 1 (felony violation of a protective order) and 5 (dissuading a witness) should be stayed because those counts were based on a continuing course of conduct that also supported count 4 (burglary). We agree.

Burglary is the entry into any building with the intent to commit larceny or any felony. (§ 459; *People v. Yarbrough* (2012) 54 Cal.4th 889, 892.) The slightest penetration of any body part through an outer boundary of a building, such as a door, is sufficient to constitute entry. (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 273–

274.) Liability attaches upon entry with the requisite intent, regardless of whether the defendant actually commits the intended crime or any crime at all. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042.)

'"Section 654 provides that even though an act violates more than one statute and thus constitutes more than one crime, a defendant may not be punished multiple times for that single act. [Citations.] The "act" which invokes section 654 may be a continuous "'course of conduct' . . . comprising an indivisible transaction. . . ." [Citation.] "The divisibility of a course of conduct depends upon the intent and objective of the defendant. . . . [I]f the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." [Citation.]' [Citations.]" (*People v. Centers* (1999) 73 Cal.App.4th 84, 98.) When the defendant commits both burglary and the underlying intended felony, section 654 normally allows "punishment for one or the other but not for both." (*Ibid.*)

Reeves testified that defendant placed his foot in the doorway of her house after she opened the door and threatened to call the police if he did not leave. He said he would not leave until she gave him her phone number. When asked whether "at any point" she told the defendant she would call the police and what defendant's reaction was, Reeves answered she did and he threatened to "come back in three months and it was gonna be way worse next time." Her testimony supports the inference that, when he placed his foot in the door, defendant was intent on obtaining Reeves's phone number at all cost, including dissuading her from calling the police, in violation of the protective order. Thus, the acts supporting counts 1 and 5 were committed pursuant to objectives incidental to each other that also provided the requisite intent for count 4.

The People argue defendant decided to dissuade Reeves from calling the police only after he set foot in the house. That is unlikely in light of Reeves's testimony that she threatened to call the police immediately upon opening the door. The People also argue that defendant formed the intent to violate the protective order by simply towing his car

7

to Reeves's house, and that his entry into the house was based on an independent objective—to assault Reeves's boyfriend. These arguments are problematic.

Disobeying a protective order is a wobbler offense that in this case was charged as a felony under section 273.6, subdivision (d), on the allegation that the violation involved "an act of violence or 'a credible threat' of violence." (See *People v. Erdelen* (1996) 46 Cal.App.4th 86, 90.) Defendant did not violate that subdivision until he started threatening Reeves, which, according to her, was after he put his foot in the door. His conviction and punishment on count 1 were not based on his decision to go to Reeves's house in the first place.

Reeves testified she did not know where her boyfriend was before defendant entered the house, but she testified that he approached while defendant was threatening her and told defendant to "get out." At that point, defendant "all of a sudden . . . charged" him. Reeves's testimony reasonably supports an inference that defendant decided to assault the boyfriend when the latter intervened. The People's suggestion that defendant could hear the conversation Reeves had with her boyfriend before opening the door is speculative. Without any evidence that defendant was aware of the boyfriend's presence at the house when Reeves opened the door, it is not reasonable to infer that defendant stepped into the house intending to assault the boyfriend, especially since his immediate hostility was directed at Reeves.

We conclude that the sentences imposed on counts 1 and 5 should be stayed because the acts on which these counts are based formed part of a continuous course of conduct, on which count 4 also was based. Defendant's objectives in committing a felony violation of the protective order and dissuading Reeves from calling the police were incidental to each other and provided the requisite intent for the burglary count. We modify the judgment accordingly.[3]

---

[3] In light of our conclusion, we need not address defendant's alternative argument that the punishment on count 5 should be stayed because the threat on which this count was based was a criminal threat or because it was used to raise count 1 to a felony.

## DISPOSITION

The sentences imposed on counts 1 and 5 are stayed, and the judgment is affirmed as modified.  The trial court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

EDMON, J.*

_____

*Judge of Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9