Filed 6/7/12

# IN THE SUPREME COURT OF CALIFORNIA

CHRISTOPHER MAGNESS, )
)
        Petitioner, )
)         S194928
        v. )
)      Ct.App. 3 C066601
THE SUPERIOR COURT OF )
SACRAMENTO COUNTY, )     Sacramento County
)    Super. Ct. No. 10F04832
        Respondent; )
)
THE PEOPLE, )
)
        Real Party in Interest. )
_____ )

     We granted review to decide whether a person standing in the driveway of a residence who uses a remote control to open a motorized garage door has entered the residence within the meaning of the burglary statute. For the reasons that follow, we hold that using a remote control to open a garage door does not constitute an entry into the residence. On these facts, defendant may be charged with attempted burglary, but he cannot be charged with a completed burglary.

## I.

     Defendant Christopher Magness was charged in a felony complaint with attempted first degree burglary of an inhabited dwelling (Pen. Code, §§ 664, 459, 460, subd. (a); further undesignated statutory references are to this code) and

second degree burglary of an automobile (§§ 459, 460, subd. (b)).  Deputy Sheriff Mark Kuzmich testified at the preliminary hearing that on the evening of July 24, 2010, Timothy Loop was at home with his wife when he heard the garage door of their house opening.  Loop ran into the garage and saw defendant standing near the end of the driveway.  When defendant fled, Loop chased him on a bicycle and saw him enter a residence.  Loop summoned Deputy Kuzmich, who arrested defendant.

Loop and Deputy Kuzmich returned to Loop's house and found the remote control for the garage door near the end of the driveway where defendant had been standing.  Loop had locked the remote control in his car, which was parked in the driveway.  The door seal on one of the car's windows had been "peeled back a little bit" and the window "was down a couple of inches."

The prosecutor at the preliminary hearing argued that defendant had committed a completed burglary of the residence.  The magistrate agreed, reasoning that opening the garage door constituted an entry into the residence.  The prosecutor filed an information charging defendant with a completed residential burglary, and the superior court denied defendant's motion to reduce the charge to attempted burglary.  The Court of Appeal granted defendant's petition for writ of prohibition, ruling that the evidence adduced at the preliminary hearing established no more than an attempted residential burglary because defendant did not enter the garage.  We granted the prosecution's petition for review.

**II.**

A person who "enters any house . . . with intent to commit . . . larceny or any felony is guilty of burglary."  (§ 459.)  It has long been settled that the slightest entry by any part of the body or an instrument is sufficient:  "As for the entry, any the least degree of it, with any part of the body, or with an instrument held in the hand, is sufficient:  as, to step over the threshold, to put a hand or a hook in at a window to draw out goods, or a pistol to demand one's money, are all of them

2

burglarious entries." (4 Blackstone's Commentaries 227, fn. omitted.) This court has recognized that "a burglary may be committed by using an instrument to enter a building — whether that instrument is used solely to effect entry, or to accomplish the intended larceny or felony as well. Thus, using a tire iron to pry open a door, using a tool to create a hole in a store wall, or using an auger to bore a hole in a corn crib is a sufficient entry to support a conviction of burglary." (*People v. Davis* (1998) 18 Cal.4th 712, 717-718 (*Davis*).)

For an entry to occur, a part of the body or an instrument must penetrate the outer boundary of the building. (*People v. Valencia* (2002) 28 Cal.4th 1, 10-11 (*Valencia*).) "In most instances, of course, the outer boundary of a building for purposes of burglary is self-evident. Thus, in general, the roof, walls, doors, and windows constitute parts of a building's outer boundary, the penetration of which is sufficient for entry." (*Id*. at p. 11.)

In *People v. Osegueda* (1987) 163 Cal.App.3d Supp. 25 (*Osegueda*), for example, the court found that the defendant had entered an electronics store for purposes of burglary by using tools to create a small hole in the wall. Osegueda and his four accomplices were arrested at 2:30 a.m. outside the electronics store. " '[A] three-foot by four-foot section of the wall had been removed and a small six by four to five inch hole existed in the inner wall leading into Rees Electronics. One could see into Rees Electronics through the hole.' " (*Id*. at p. Supp. 28.) "Instruments were discovered adjacent" to the hole. (*Id*. at p. Supp. 29.) The Court of Appeal held that this was sufficient evidence to support the jury's implicit finding that "the air space of Rees Electronics was indeed penetrated" and thus the defendant had entered the store. (*Id*. at p. Supp. 32.)

The Court of Appeal in *People v. Ravenscroft* (1988) 198 Cal.App.3d 639 (*Ravenscroft*), applied this "air space test" to hold that the defendant had entered two banks for purposes of burglary by inserting a stolen automatic teller machine

3

(ATM) card into two ATMs that were "mounted inside the banks and secured flush with the exterior walls of those banks." (*Ravenscroft*, at p. 641.) However, we disapproved the decision in *Ravenscroft* in *Davis*, *supra*, 18 Cal.4th at page 722, footnote 5, in which we held that inserting a forged check into a chute in the walk-up window of a check-cashing business did not constitute an entry for purposes of burglary. (*Id.* at p. 722.) Although we agreed with the *Ravenscroft* court "that the ATM card in that case was inserted into the air space of the ATM" (*Davis*, at p. 722, fn. 5), we concluded that this was not an entry for purposes of burglary because neither that act nor inserting the forged check into the chute in *Davis* "violates the occupant's possessory interest in the building as does using a tool to reach into a building and remove property." (*Davis*, at p. 722.) We explained: "Inserting a stolen ATM card into the designated opening in an ATM is markedly different from the types of entry traditionally covered by the burglary statute, as is passing a forged check through a chute in a walk-up window. In each situation the defendant causes an object to enter the air space of a building, but it is not apparent that the burglary statute was meant to encompass such conduct. It is important to establish reasonable limits as to what constitutes an entry by means of an instrument for purposes of the burglary statute. Otherwise the scope of the burglary statute could be expanded to absurd proportions." (*Id*. at p. 719.)

Our opinion in *Davis* quoted our observation in *People v. Gauze* (1975) 15 Cal.3d 709 that " '[a] burglary remains an entry which invades a possessory right in a building.' . . . 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation — the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other

4

laws, so much as to forestall the germination of a situation dangerous to personal safety.'  Section 459, in short, is aimed at the danger caused by the unauthorized entry itself." (*Davis*, *supra*, 18 Cal.4th at p. 721, quoting *People v. Gauze*, 15 Cal.3d at pp. 714, 715.)

Subsequently, the Court of Appeal in *People v. Calderon* (2007) 158 Cal.App.4th 137 (*Calderon*) held that kicking in the door of a residence constituted an entry for purposes of burglary.  The defendant and two accomplices went to the victim's home to collect a debt.  One of the defendant's accomplices "kicked in the victim's door, but before anyone in the group had gone inside, the victim came running out.  Defendant tried to stab the victim in the chest, but the victim grabbed the knife blade; thus, he was slashed in the hand instead." (*Id*. at p. 139.)

The trial court in *Calderon* instructed the jury that " '[u]nder the law of burglary, a person enters a building if some part of his . . . body or *some object under his control* penetrates the area inside the building's outer boundary.' (Italics added.)" (*Calderon*, *supra*, 158 Cal.App.4th at p. 142.)  This instruction was correct.  As we stated in *Valencia*, *supra*, 28 Cal.4th at page 8, entry for purposes of burglary "may be effected by the intruder or by an instrument employed by the intruder, whether used 'solely to effect entry, or to accomplish the intended larceny or felony as well.' [Citation.]"  We added that " '[a]ny kind of entry, complete or partial, . . . will' suffice. [Citation.]  All that is needed is entry 'inside the premises'. . . ." (*Id*. at p. 13.)

Calderon argued on appeal that the instruction "erroneously allowed the jury to convict him of burglary on the theory that the penetration of the victim's home by the victim's own door constituted the necessary entry." (*Calderon*, *supra*, 158 Cal.App.4th at p. 139.)  But the suggestion that the door itself could constitute an instrument that the defendant used to enter the house came not from the trial court's instructions, but from the prosecutor's argument.  The prosecutor had

5

argued that the defendant entered the victim's house when his accomplice kicked in the door, either because the accomplice's foot " 'penetrated the outer boundary of that door' " or because the door was an instrument under the accomplice's control that penetrated the outer boundary of the building. (*Id*. at pp. 141-142.) Defense counsel did not agree " 'that the door going inside the residence is sufficient in and of itself for a burglary' " and argued that the defendant should not be convicted because it was unclear whether the accomplice's foot had penetrated the outer boundary of the residence. (*Id.* at p. 142.) The Court of Appeal affirmed the judgment, ruling that "the trial court correctly instructed the jury on the 'entry' element of burglary" because "kicking in the door of a home is a sufficient entry to constitute burglary." (*Id*. at p. 145.)

The Court of Appeal in *Calderon* reached the correct result. Just as "[i]t reasonably could be inferred [in *Osegueda*] that, in creating the hole in the wall, some portion of the tools had entered the building" (*Davis*, *supra*, 18 Cal.4th at p. 717), it reasonably could be inferred in *Calderon* that, in kicking the door and causing it to open, some portion of the accomplice's foot had crossed the outer boundary of the residence. (Accord, *Paulley v. Com.* (Ky. 2010) 323 S.W.3d 715, 722-723 [sufficient entry for burglary when the door of a residence had "opened slightly when it was kicked," so the defendant's "foot could have crossed the threshold when the door was ajar"]; *State v. Adorno* (1997) 45 Conn.App. 187, 195 [695 A.2d 6] ["Common sense dictates that it would be reasonable to conclude that, in using the force necessary to kick open a locked door, the momentum would carry the defendant or one of his companions into the victim's apartment."].) The jury in *Calderon* was correctly instructed, and there was sufficient evidence to support a finding that the accomplice's foot had entered the residence. But the court in *Calderon* erred in reasoning that the door itself was an instrument under

6

the defendant's control that penetrated the outer boundary of the building (*Calderon*, *supra*, 158 Cal.App.4th at p. 145), as we explain below.

The court in *Calderon* observed that our opinion in *Davis* "focused on whether the insertion of the object into a building violated an interest that the burglary statute is intended to protect, such as the occupant's possessory interest in the building." (*Calderon*, *supra*, 158 Cal.App.4th at p. 145.) The *Calderon* court then stated emphatically: "Surely kicking in the door to a home invades the possessory interests in that home!" (*Ibid*.) The court noted that "kicking in a door creates some of the same dangers to personal safety that are created in the usual burglary situation — the occupants are likely to react to the invasion with anger, panic, and violence." (*Ibid*.) While admitting that "the door is doing what a door is supposed to do," the court found it significant that "it is doing so under the control of an invader, not the householder." (*Ibid*.)

The *Calderon* court was correct that kicking in a door invades the occupant's possessory interest and is likely to provoke a violent response. To constitute entry for purposes of the burglary statute, however, these effects must be caused by a physical entry into the building. (*People v. Gauze*, *supra*, 15 Cal.3d at p. 714 ["A burglary remains an entry which invades a possessory right in a building."].) These same dangers could be created by a perpetrator who stood outside a house and threatened to set fire to the building unless the occupants opened the door. The occupants might well open the door and react with anger, panic, or violence, but the perpetrator would not have entered the house for purposes of burglary.

The court in *Calderon* conflated *Davis*'s inquiry into what kinds of physical entry implicate the interests underlying the burglary statute with the threshold inquiry into whether a physical entry has occurred at all. It is beyond cavil that there must be a physical entry for a burglary to occur. (13 Am.Jur.2d (2011)

7

Burglary, § 16, p. 232 ["Entry is an indispensable element in the crime of burglary as it is understood at common law."]; accord, *People v. Davis* (1972) 3 Ill.App.3d 738, 739 [279 N.E.2d 179] ["Obviously, the essence of the crime [of burglary] is unlawful entry . . . ."]; *State v. O'Leary* (1954) 31 N.J.Super. 411, 416 [107 A.2d 13] ["Entry is an indispensable element to the commission of the crime" of burglary.].) The defendant in the classic case of *Walker v. State* (1879) 63 Ala. 49, 50, committed burglary by using an auger to bore a hole in the bottom of a corn crib. The Supreme Court of Alabama acknowledged that boring a hole in the corn crib certainly constituted a breaking, but recognized if "an *entry* is not effected, burglary has not been committed." (*Id.* at p. 51, italics added.) The court held that the defendant had used an instrument to enter the corn crib when the auger "was intruded into the crib." (*Id.* at p. 52.) In *People v. Nible* (1988) 200 Cal.App.3d 838, 845, the Court of Appeal held that "when a screen which forms the outer barrier of a protected structure is penetrated, an entry has been made for purposes of the burglary statute." We relied upon *Nible* to hold in *People v. Valencia*, *supra*, 28 Cal.4th at page 11, that "the penetration of" "a building's outer boundary . . . is sufficient for entry." As these cases show, the requirement of entry is not difficult to satisfy; the slightest penetration will suffice. But without an entry, no burglary has occurred.

The Attorney General's argument that causing the garage door to open constitutes entering the house for purposes of burglary confuses the discarded common law requirement of a breaking with an entry. "At common law, burglary was defined to be 'a breaking and entering of the mansion-house of another in the night, with the intent to commit some felony within the same, whether such felonious intent be executed or not.' [Citation.]" (*People v. Barry* (1892) 94 Cal. 481, 482.) Opening a door constituted a breaking at common law: "No more is needed . . . than the opening of a door or window . . . ." (Perkins & Boyce,

Criminal Law (3d ed. 1982) Burglary, § 1, p. 247 (Perkins & Boyce); 3 Wharton's Criminal Law (15th ed. 1995) Burglary, § 318, pp. 225-226 (Wharton).)

But a breaking alone is not sufficient to constitute burglary; the defendant must also enter. "While a breaking . . . is indispensable to common-law burglary, it is not sufficient unless there is also an entry." (Perkins & Boyce, *supra*, § 1, pp. 252-253, fn. omitted.) "At common law, a defendant must enter as well as break into the dwelling house of another." (Wharton, *supra*, § 321, p. 246.) "[T]here is an entry when the defendant, after opening a closed door, steps across the threshold . . . or when, in the course of pushing open a closed door or raising a closed window, his finger or hand happens to pass the line of the threshold or to pass through the opening." (*Id*., § 322, pp. 247-248; see 3 LaFave, Substantive Criminal Law (2d ed. 2003) Burglary, § 21.1, pp. 205-211.)

In California, the requirement of a breaking has long been eliminated from our burglary statute. (*People v. Barry*, *supra*, 94 Cal. at p. 482.) Here, defendant may well have committed a common law breaking by using the remote control to open the garage door. But whether or not he committed a breaking, he did not commit burglary because he did not enter the residence. Nothing penetrated the outer boundary of the residence. There is no allegation, for example, that defendant reached under the bottom of the garage door with his hand or a tool. (Cf. *People v. Moore* (1994) 31 Cal.App.4th 489, 490 & fn. 4 [sufficient entry where tire iron penetrated screen door of residence and tip of tire iron penetrated the plane of the door itself].) The facts here are conceptually no different than if a would-be intruder were to approach an unlocked sliding glass door on the back patio of a residence and open it. Assuming the sliding door is the interior pane of a double-pane frame, sliding it open would cause the door to displace the air inside the residence. If the would-be intruder were to stop before any part of his body or any instrument under his control crossed the door's threshold, then no burglary would

9

have occurred. (Accord, *Price v. Com.* (1908) 129 Ky. 716, 718 [112 S.W. 855] [no burglary when the defendant broke the seal on the door of a railroad car and slid the door "back a little," but then closed the door and left when a train approached, because the evidence failed to show "the slightest entry of the car"].) A defendant who opens a door but does not enter the structure may be charged with attempted burglary, but not with a completed burglary.

Decisions from other jurisdictions are in accord, and our research has disclosed no case that has upheld a conviction of burglary where there was no physical entry of the structure. The defendant in *Galemore v. State* (1933) 124 Tex.Crim. 77, 78 [61 S.W.2d 519, 519-520] was observed "coming over the fence into the garden; [the defendant] went to the garage, opened the door, looked in, and closed that door. He then went to a feed barn, opened the door, looked in, and closed that door; he then went to the chicken house, opened the door to it, and looked in." The homeowner then detained the defendant at gunpoint. The court held that there was no burglary, because "the offense is not complete unless there is an '*entry*' of some kind into the building charged to have been burglarized . . . ." (124 Tex.Crim. at p. 79.) The court noted that the defendant "at no time did anything more than open the doors to the several houses and look in. There is no evidence that he went into either building, or reached in with his hand as if to take anything therefrom." (*Ibid.*) Thus, the court concluded that "at no time did [the defendant] make any kind of 'entry' into any one of the three houses." (*Ibid.*; see *Mason v. State* (Tex.Crim.App. 1907) 100 S.W. 383, 384 [no entry when defendant broke store window but was apprehended before reaching into building].)

In sum, something that is *outside* must go *inside* for an entry to occur. This has been true in every case to our knowledge where a completed burglary has been found, including *Osegueda*, *Valencia*, *Calderon*, and other decisions cited above. A person, a foot, a hand, or a tool can "enter" a house. A door, however, marks the

10

boundary between outside and inside. Here, even assuming that the garage door opened inward in some fashion, the door did not go *from the outside* to the inside of the house. The garage door was never outside the house; it formed part of the house's outer boundary.

The Attorney General contends that the position we adopt would lead to absurd results. As an example, she says it would be absurd to find a burglary if an intruder "uses a glass cutter to create a hole in the window and *any* portion of the glass cutter crosses the threshold," but no burglary if the same intruder "uses a laser to cut a hole in [the window], causing glass to fall into the home." We express no view as to whether use of a laser to cut a hole that causes glass to fall into a home would constitute burglary. (Cf. *Davis*, *supra*, 18 Cal.4th at p. 719.) But we see nothing more absurd in the Attorney General's example, taken at face value, than in the observation that no burglary would have occurred in *Valencia*, *supra*, 28 Cal.4th at pages 12-13, had the defendant removed the window screen but not penetrated into the area behind it, or that no burglary would have occurred on the facts in *Osegueda*, *supra*, 163 Cal.App.3d at page Supp. 32, had the jury concluded that no instrument had crossed the outer boundary of the electronics store.

There is no question that "an intruder's use of a garage door opener to open a garage door violates the occupant's possessory interest and fosters a situation that can be extremely dangerous to personal safety." But not all conduct that implicates the interests underlying the burglary statute constitutes a completed burglary. That the requirement of "entry" inevitably calls for line drawing does not make the line drawing absurd. The line we adopt — something outside must go inside for an entry to occur — is simple, workable, and consistent with common sense. It is also consistent, to our knowledge, with every case that has found a completed burglary.

11

## CONCLUSION

The judgment of the Court of Appeal is affirmed.

LIU, J.

WE CONCUR:   CANTIL-SAKAUYE, C. J.
                KENNARD, J.
                BAXTER, J.
                WERDEGAR, J.
                CHIN, J.
                CORRIGAN, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Magness v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 196 Cal.App.4th 630
**Rehearing Granted**

_____

**Opinion No.** S194928
**Date Filed:** June 7, 2012

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Allen Sumner and Ernest W. Sawtelle

_____

**Counsel:**

Paulino G. Durán, Public Defender, Arthur L. Bowie and Alicia Hartley, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., and Kamala G. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Maggy Krell and Sally Espinoza, Deputy Attorneys General, for Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Arthur L. Bowie
Assistant Public Defender
9591 Kiefer Boulevard
Sacramento, CA 95827
(916) 875-5077

Sally Espinoza
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
(916) 323-5312