**Certiorari Granted, June 19, 2015, No. 35,298**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-073**

**Filing Date:  April 27, 2015**

**Docket No. 33,090**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**ANTHONY HOLT,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**BUSTAMANTE, Judge.**

**{1}** Anthony Holt (Defendant) was trying to remove a window screen from Carolyn Stamper's (Stamper) home when he noticed her through the window. Although he turned and left the premises without breaching the window, he was convicted of one count of breaking

and entering and now appeals on two grounds. First, he argues that the Legislature did not intend to punish as breaking and entering an intrusion into the space between the screen and the window. Second, he maintains that the evidence was insufficient for the jury to conclude that he in fact entered that space. We affirm.

## BACKGROUND

**{2}** Stamper, a resident of Las Cruces, New Mexico, was relaxing on her sofa one December afternoon when she heard the doorbell ring and a rustling sound at the front door. She did not see anyone through the peephole in the door. She then heard a "metal on metal" sound at the window, which was approximately seven feet from the front door. The window was open approximately four inches because Stamper's "smelly old dog" was in the room with her. The curtains over the window were drawn except for a gap of about four inches. Through the gap, Stamper could see a man at the window who was working to remove the aluminum window screen. The screen was halfway removed from the window and the man was trying to get the screen free of the track at the bottom of the window frame. At trial, Stamper agreed with the State that while holding the screen, the man's "fingers were . . . in that area between the window and the screen[.]"

**{3}** After a few seconds, the man looked up and noticed Stamper. He said, "Oh, I'm sorry," then turned and left. As he was leaving, Stamper told him, "You better be sorry, you thief[.]" Stamper testified that the screen "was pretty well destroyed" and had to be replaced. She also testified that she was frightened by the incident and that it "was the first time [she] had been confronted with this in [her] own home."

**{4}** A jury convicted Defendant of one count of breaking and entering, contrary to NMSA 1978, Section 30-14-8(A) (1981). Additional facts are provided as necessary to our discussion.

## DISCUSSION

**{5}** Defendant makes two arguments on appeal. First, he argues that the facts of this case do not fit within a breaking and entering charge, because entering the space between a screen and a window is not the same as entering the interior of a home or structure. Second, he argues that the evidence was not sufficient to support a conclusion that Defendant entered the space between the screen and window. We address these arguments in turn.

**The Breaking and Entering Statute Encompasses Entry Into the Space Between the Screen and Window**

**{6}** Defendant argues that, even if his fingers were between the screen and the window, he cannot be convicted of breaking and entering. Defendant makes two contentions: (1) the plain language of the breaking and entering statute requires entry into the interior of a structure, i.e., entry beyond the last barrier to the structure's interior; and (2) the breaking

2

and entering statute is ambiguous because it does not define the boundaries of a structure, and thus, under the rule of lenity, must be construed against the State. We interpret these arguments as alternatives because the rule of lenity applies only if, after examination of the plain language and other tools of statutory construction, the statute remains ambiguous. *State v. Hall*, 2013-NMSC-001, ¶ 19, 294 P.3d 1235 ("A statute is ambiguous for the purpose of the rule of lenity only if reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." (internal quotation marks and citation omitted)). After examining the statute's language and purpose, as well as cases interpreting it and similar statutes, we conclude that Defendant's conduct falls within that which the Legislature sought to punish. Based on our construction of the statute, we conclude that it is not ambiguous such that the rule of lenity applies. *Id.* Hence, we need not address Defendant's second argument.

**{7}** Questions of statutory interpretation are reviewed de novo. *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. The goal of statutory interpretation is "to ascertain and give effect to the intent of the Legislature." *Id.* (internal quotation marks and citation omitted). We begin by examining the "plain language" of the statute and, if that language is clear and unambiguous, we refrain from further construction. *State v. Johnson*, 2001-NMSC-001, ¶ 6, 130 N.M. 6, 15 P.3d 1233. "The plain meaning rule, however, is only a guideline for determining the legislative intent. It is the responsibility of th[e] Court to search for and effectuate the purpose and object of the underlying statutes." *Id.* Thus, "[t]he plain meaning rule 'must yield on occasion to an intention otherwise discerned in terms of equity, legislative history, or other sources.' " *Smith*, 2004-NMSC-032, ¶ 9 (citation omitted). Finally, "statutes relating to the same general topic should be interpreted in light of each other[.]" *State v. Parvilus*, 2014-NMSC-028, ¶ 16, 332 P.3d 281. As discussed in more detail below, we rely on the burglary statute, NMSA 1978, § 30-16-3 (1971), as an aid in our interpretation because of its similarities with the breaking and entering statute.

**{8}** Section 30-14-8(A) defines "breaking and entering" as

> the unauthorized entry of any . . . dwelling or other structure, movable or immovable, where entry is obtained by fraud or deception, or by the breaking or dismantling of any part of the . . . dwelling or other structure, or by the breaking or dismantling of any device used to secure the . . . dwelling or other structure.

**{9}** As it relates to the facts here, UJI 14-1410 NMRA requires the jury to find that (1) "[t]he defendant entered [the structure] without permission" and (2) "[t]he entry was obtained by" breaking or dismantling a part of the structure. Unlike in some other states' statutes, neither the breaking and entering statute nor the burglary statute states what delimits a structure. *Compare* § 30-14-8(A) and § 30-16-3 *with* Ariz. Rev. Stat. Ann. § 13-1501(3) (2012) (defining "[e]ntry" as "the intrusion of any part of any instrument or any part of a person's body inside the *external boundaries* of a structure" (emphasis added)). Nor do they state that entry into any part of a structure will suffice. *Compare* § 30-14-8(A) and § 30-16-3

3

*with* Tex. Penal Code Ann. § 30.02(a)(1) (West 2007) (prohibiting entry of a building "or any portion of a building"). In *State v. Office of Public Defender ex rel. Muqqddin*, the Supreme Court relied on the absence of such language in the burglary statute to reject the idea that entry into a part of a structure is equivalent to entry into the structure itself, stating that "the Legislature has given no indication that it intended [such equivalency]." 2012-NMSC-029, ¶ 38, 285 P.3d 622. While the breaking and entering statute provides that a breaking may be accomplished by "breaking or dismantling any part of the . . . dwelling or other structure," the phrase "any part of" pertains only to breaking or dismantling, not to the protected spaces. Section 30-14-8(A); *see Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 9, 110 N.M. 314, 795 P.2d 1006 ("Relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." (alterations, internal quotation marks, and citation omitted)). We conclude that the plain language of the breaking and entering statute sheds little light on the Legislature's intent as to the issue before us: whether the space between a window screen and an open window is protected space under the statute.

**{10}** We next examine the purposes of the breaking and entering statute to determine whether the conduct here falls within the harm the Legislature sought to prevent. Because "New Mexico's breaking-and-entering statute is itself grounded in common law burglary[,]" cases interpreting the burglary statute inform our analysis. *State v. Rubio*, 1999-NMCA-018, ¶ 13, 126 N.M. 579, 973 P.2d 256; *see* UJI 14-1410, comm. cmt. ("New Mexico's breaking and entering statute is a type of statutory burglary."). Like burglary, "the purpose of New Mexico's breaking-and-entering statute is . . . to protect possessory rights." *Rubio*, 1999-NMCA-018, ¶ 15; *Muqqddin*, 2012-NMSC-029, ¶ 40 (stating that burglary protects possessory rights). Those possessory rights, however, "go beyond the mere right to physical possession of an object" and include the right to exclude, privacy interests, and "security of habitation." *Muqqddin*, 2012-NMSC-029, ¶¶ 40-43. "It is the invasion of privacy and the victim's feeling of being personally violated that is the harm caused by the modern burglar, and the evil that our society is attempting to deter through modern burglary statutes." *Id.* ¶ 42.

**{11}** "[I]n order for an area to be considered prohibited space under [the burglary statute], it must have some sort of enclosure." *Id.* ¶ 44 (citing *State v. Foulenfont*, 1995-NMCA-028, ¶¶ 10-11, 119 N.M. 788, 895 P.2d 1329). "[I]t is this enclosed space that the Legislature intended to protect." *Id*. The burglary statute defines prohibited space as "any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable[.]" Section 30-16-3. The breaking and entering statute includes the same list. Section 30-14-8(A). In both statutes, the spaces in which possessory, privacy, and security interests are implicated are delineated by an enclosure. *See Muqqddin*, 2012-NMSC-029, ¶ 44.

**{12}** Our question thus becomes whether a window screen forms an enclosure such that penetration beyond the screen is sufficient for entry of a structure. "[I]n general, the roof, walls, doors, and windows constitute parts of a building's outer boundary, the penetration of which is sufficient for entry." *People v. Valencia*, 46 P.3d 920, 925 (Cal. 2002),

*disapproved of by People v. Yarbrough*, 281 P.3d 68 (Cal. 2012)[1]; *see Muqqddin,* 2012-NMSC-029, ¶ 48 (stating that "[a] window, by its nature, creates an opening in an enclosure."). But other types of boundaries might also suffice because "[i]t is the nature of the enclosure that creates [prohibited space]." *Id.* ¶ 45. "'[T]he proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions.' " *Id.* (quoting *People v. Nible*, 247 Cal. Rptr. 396, 399 (Ct. App. 1988), *holding modified by Valencia*, 46 P.3d at 924).

**{13}** Relying in part on this test, the *Muqqddin* Court concluded that "a vehicle's gas tank and wheel wells do not constitute protected space under [the burglary statute]." *Id.* ¶ 12. No New Mexico court since *Muqqddin* has used this test to address the legal question here. However, in *Nible*, the case from which the test was derived, the California Court of Appeals stated that "the focus of the question whether the penetration of a [partially open] window screen constitutes a burglarious entry must be on whether a reasonable person would believe a window screen provides some protection against unauthorized intrusions." 247 Cal. Rptr. at 399. It found that the answer to this question "is unequivocally in the affirmative." *Id*. It went on to state that

> the screen door [or window] is not to be considered as a mere protection against flies, but rather as a permanent part of the dwelling. The holdings [in case law] proceed, it would seem, on the grounds that the screen door [or window] is a part of the house on which the occupants rely for protection and that to open such a door [or window] is a violation of the security of the dwelling house which is the peculiar gravamen of a burglarious breaking.

*Id.* (second, fourth, and fifth alterations in original) (internal quotation marks and citation omitted). It concluded that "when a screen which forms the outer barrier of a protected structure is penetrated, an entry has been made for purposes of the burglary statute." *Id*. We note that the *Nible* court found this analysis "especially apposite to the [facts in that] case, where the window screen was affixed in a slot in the frame with no handle or other device to facilitate its removal from the exterior of the apartment." *Id*. Here, Stamper testified that removal of the screen required use of a screwdriver or knife and that it was "not . . . a snap" to remove. In addition, in *Nible*, like here, the window behind the screen was partially open and the residence's occupants were inside. *See id.* at 397.

**{14}** Similarly, in *Valencia*, the Supreme Court of California relied on a slightly different

---

[1]In *Yarbrough*, the California Supreme Court "disapprove[d] as ill-considered dictum" a statement in *Valencia* that an "unenclosed balcony" was not encompassed within the "reasonable belief test." *Yarbrough*, 281 P.3d at 71.

formulation of the test[2] to conclude that "penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute even when the window itself is closed and is not penetrated.*" Valencia*, 46 P.3d at 927. The Court stated:

> [A] window screen is clearly part of the outer boundary of a building for purposes of burglary. A reasonable person certainly would believe that a window screen enclosed an area into which a member of the general public could not pass without authorization. . . . [W]indow screens, which announce that intrusion is unauthorized, do not limit their message to flies but extend it to burglars as well.

*Id.*

**{15}** Other courts examining similar circumstances have reached similar conclusions. For example, in *Commonwealth v. Burke*, the Massachusetts Supreme Court stated that "[it could] find no support at common law for the view . . . that . . . an entry must be accompanied by a removal of all remaining barriers (i.e., the inner window) for it to be actionable" and held that "the more common view is that outer window coverings should be treated as part of the dwelling itself, and any entry beyond them, no matter if further impeded by additional window coverings, should be punished." 467 N.E.2d 846, 849 (Mass. 1984). It concluded that, therefore, "[e]vidence that the defendant placed his hand between the broken storm window and the inner window would be sufficient to warrant a finding of an entry under [the Massachusetts burglary statute]." *Id.* The South Carolina Supreme Court held in *State v. Chappell* that a screen covering a window "was more than a mere protection against flies and mosquitoes; it was an enclosing part of the dwelling house" and that where the defendant "tor[e] away" the corner of the screen and "inserted his hand through the hole thus made and raised the window sash[, t]his was not only a breaking, but was an entry sufficient in law to constitute burglary[.]" 193 S.E. 924, 925 (S.C. 1937)[3]; *cf. State v. Kindred*, 307 P.3d 1038, 1040-41 (Ariz. Ct. App. 2013) (examining "whether the 'external boundar[y]' of the structure, as that phrase is used in [Section 13-1501(3) of Arizona's burglary statute], is the exterior of the door, or whether a person or instrument must penetrate

---

[2]Whereas the *Nible* court stated the test as "whether a reasonable person would believe a window screen provides some protection against unauthorized intrusions[,]" 247 Cal. Rptr. at 399, the *Valencia* Court stated the test as "whether a reasonable person would believe that the element of the building in question enclosed an area into which a member of the general public could not pass without authorization." 46 P.3d at 926.

[3]The dissent argues that *Chappell* does not support our conclusion. But the facts in that case are very similar to those here: the defendant tore a screen and reached through to raise the window sash. *Id.* at 925. There is no indication in that case that any part of the defendant's body went through the window itself. *Id.* Thus, like here, the requisite entry was accomplished by entering the space between the screen and (open) window.

past the door in order to enter the structure" and holding that "a person must penetrate whatever forms a structure's outer boundary—a door, window, or wall, for example—but need not go further to have entered the structure.")[4]; *Barrick v. State*, 119 N.E.2d 550, 553 (Ind. 1954) (stating that a "breaking" sufficient for burglary "includes the putting aside of any material part of the building *intended as a security against invasion, such as removing a window screen*" (emphasis added))[5]; *State v. Gatewood*, 221 P.2d 392, 396 (Kan. 1950) (holding that there was an entry where the defendant had broken a screen door even though he had not opened the wooden door behind it).[6]

{16}    Defendant points to cases using the term "interior" in their analyses of "entry" to support his contention that the breaking and entering statute requires some further penetration into the structure than occurred here. For example, in *State v. Sorrelhorse*, this Court stated that "the term 'entry' in the criminal code requires only the slightest penetration of an interior space." 2011-NMCA-095, ¶ 7, 150 N.M. 536, 263 P.3d 313. Similarly, in *State v. Reynolds*, the Court noted that "[a]ny penetration, however slight, of the interior space is sufficient [to constitute entry]." 1990-NMCA-122, ¶ 37, 111 N.M. 263, 804 P.2d 1082 (second alteration in original) (internal quotation marks and citation omitted). However, neither of these cases was using the term to address the question presented here. Rather, both *Sorrelhorse* and *Reynolds* were concerned with the extent to which the defendant penetrated the prohibited space.  *See Sorrelhorse*, 2011-NMCA-095, ¶¶ 6-8; *Reynolds*, 1990-NMCA-122, ¶ 37.

{17}    The question here, in contrast, has to do with what *defines* the prohibited space.

---

[4]Although we agree with the dissent that *Kindred* is distinguishable because it relies on Arizona's burglary statute, which requires penetration of any "external boundary," we disagree that the *Kindred* court "found no other authority," ¶ 40, for its conclusion that "insertion of [a] pry bar into the door jamb constitutes entry as contemplated by" that statute. *Id.* at 1041. Indeed, the court cited to five cases, including *Burke*, in support of its holding. *Id.*

[5]In *Barrick*, the court analyzed only whether the rattling of the doors constituted a "breaking" sufficient for attempted burglary if such a crime existed in Indiana. *Id.* at 553 n.1. It did not analyze whether an entry occurred. It is cited here for its recognition that a window screen serves as "security against invasion." *Id.*

[6]As stated in the dissent, the facts in *Gatewood* included entry into an enclosed porch attached to the house, which the court held was an entry sufficient for burglary.  221 P.2d at 394. "The entrance door to the screen porch, however, was not the only 'outer door' the appellant broke" in that case. *Id.* at 395. The part of the opinion we rely on has to do with whether entry was accomplished where another screen door was "not only broken but a hook which fastened the door was lifted and the screen door was opened" but the wooden door behind it was not opened. *Id.* at 395-96. The court concluded that "[the defendant] did enter his hand and an arm, at least partially, when he unsuccessfully attempted to unlock the inside door with a key." *Id.* Thus, this portion of *Gatewood* supports our conclusion.

7

"[T]he established rule [is] that cases are not authority for propositions not considered[.]" *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2002-NMCA-001, ¶ 10, 131 N.M. 419, 38 P.3d 187 (internal quotation marks and citation omitted), *aff'd but criticized by*, 2003-NMSC-011, 133 N.M. 661, 68 P.3d 901. Thus, we decline to ascribe undue significance to use of the word "interior" in those cases.

**{18}** Similarly, the dissent cites to out-of-state cases for the proposition that an "entry" requires a crossing of a structure's threshold. *See* ¶ 41. Several of these are directly on point. For example, in *State v. Pigques*, 310 S.W.2d 942, 944 (Mo. 1958), the defendant "had entered into the space between [some] outer wooden doors and [an] inner wire-mesh door." The court thus considered "whether his entry into that space would constitute an entry into the building within the meaning of [Missouri's burglary statute]." *Id.* Relying in part on the principle that entry requires a breach of the last barrier to the interior of the structure, the court held that the defendant had not completed a burglary but instead could be convicted only of attempted burglary. *Id.* at 945-46. In *State v. McCall*, on which *Pigques* relied, the Alabama Supreme Court considered whether there was an entry where the defendant "wrested open the window shutters, and his hands protruded beyond the line made by the shutters when shut, . . . notwithstanding the sash remained down and the glass was unbroken." 4 Ala. 643, 644 (1843) (internal quotation marks and citation omitted). The court concluded that

> [i]t cannot be, that the common security of the dwelling house is violated by breaking one of the shutters of a door or window which has several. True, it weakens the security which the mansion is supposed to afford, and renders the breach more easy; but as additional force will be necessary before an entry can be effected, there can, under such circumstances, be no burglary committed.

*Id.* at 646. Thus, the court held that there was no burglary because "there was nothing but a breach of the blinds, and no entry beyond the sash window [and t]he threshold of the window had not been passed[.]" *Id.*

**{19}** Interestingly, another case relied on by the dissent takes a different approach. In *Miller v. State*, the defendant had cut a hole in the roof of a store, climbed into the attic, and cut a hole in the ceiling, but had not entered the interior of the store itself. 187 So. 2d 51, 52 (Fla. Dist. Ct. App. 1966). The defendant "contend[ed] that breaking of the roof and the subsequent breaking of the ceiling [wa]s not enough to constitute entry." *Id.* The court stated that it "would be inclined to agree with [the defendant] if it were not for the fact that there [wa]s evidence in the record that there was an airspace between the roof and the ceiling. . . . [I]t is reasonable to conclude that it would be necessary for the [defendant] to intrude himself, or some part of himself, into the hole that he had created in the roof in order to cut a hole in the ceiling on the other side of the airspace." *Id.* 52-53. Hence, in *Miller*, entry beyond the last barrier into the store (the ceiling) was not required to effect an entry. In other words, an entry into the space between the outer barrier and inner barrier was sufficient for

a breaking and entering charge. *Id.* at 53.

**{20}** We recognize that the *Pigques* and *McCall* courts came to a conclusion different from ours and from the conclusions reached in *Nible*, *Valencia*, *Burke*, and *Chappell*. Faced with two competing analyses, we must choose the path most consonant with the purpose of our statute and Supreme Court precedent. We believe we have done so. Based on the test stated in *Muqqddin* and the reasoning of our sister states' courts, we conclude that a reasonable person would expect the window screen here to afford some protection from unauthorized intrusions. *See Muqqddin*, 2012-NMSC-029, ¶ 45. Consequently, we conclude that if any part of Defendant entered the space between the screen and the window, he "entered" the structure for purposes of the breaking and entering statute.

**{21}** To the extent that Defendant argues that our holding will produce absurd results because "[t]his interpretation would convict of [b]reaking and [e]ntering any person who opens a screen door to knock on the door itself[,]" we disagree because under the "reasonable belief test" it would be unreasonable to believe that an unlocked screen door was a barrier "a member of the general public could not pass without authorization." *Valencia*, 46 P.3d at 926.

**{22}** In *Muqqddin*, the Supreme Court cautioned lower courts against "expand[ing] . . . the reach of . . . statute[s] . . . without any parallel change in the statute." 2012-NMSC-029, ¶¶ 1, 49. Our conclusion does not do so. In *Muqqddin*, the gas tank and wheel well were not enclosed spaces in which "things are stored and personal items can be kept private." *Id.* ¶ 61. In contrast, a home is a structure the Legislature clearly intended to protect. *See id.* ¶ 39 (stating that the common-law purpose of burglary—security of the home—still applies). Unlike the unenclosed parts of vehicles in *Muqqddin*, the screen here was no less a component of the home's enclosure than the walls, windows, or doors. Contrary to the dissent's assertion, our analysis does not depend on the perimeter or "close" concept that was rejected in *Muqqddin*. *Id.* ¶ 46. In rejecting that concept, the *Muqqddin* Court was specifically rejecting the idea of an "imaginary plane created by some portion of a structure that is by its nature open to the elements." *Id.* Rather, our analysis is based on whether the window screen—a real, non-imaginary device—provided protection against intrusion and enclosed protected space. *See id.* ¶ 45. Because we conclude that it did, Defendant's placement of his hands behind the window screen was an intrusion into the structure's enclosure and infringed on Stamper's possessory rights. Such conduct is associated with the "feeling of violation and vulnerability" that the Legislature sought to prevent with the breaking and entering statute. *See id.* ¶ 43.

**There is Sufficient Evidence to Support the Jury's Conclusion That Defendant "Entered" the Structure**

**{23}** We turn next to Defendant's second argument that there was insufficient evidence that Defendant intruded into the structure at all. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict,

9

indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. After viewing the evidence in this light, we examine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

{24}     To convict Defendant, the jury had to find that (1) "the defendant entered [Stamper's residence] without permission; the least intrusion constitutes an entry;" and (2) "the entry was obtained by the dismantling of a window screen[.]" *See* UJI 14-1410. As we have discussed, because the window screen was part of the enclosure around the home, any intrusion into the space between the screen and window constitutes an "entry" for purposes of the breaking and entering statute. *See Sorrelhorse*, 2011-NMCA-095, ¶ 7 ("[T]he term 'entry' in the criminal code requires only the slightest penetration of an interior space."). Stamper testified that "[she] saw this man, and he had the screen halfway off the window, and he had his hand on each side of the screen, and he was twisting it and turning it and looking down. . . . He was trying to get the screen off." She described Defendant's fingers as being "over the screen." On redirect, she agreed with the State that Defendant's fingers "were then in that area between the window and the screen[.]" Viewed in the light most favorable to the verdict, this testimony is sufficient to permit the jury to conclude that Defendant had intruded into the protected space between the screen and window.

**CONCLUSION**

{25}     For the foregoing reasons, we affirm.

{26}     **IT IS SO ORDERED.**

_____
          **MICHAEL D. BUSTAMANTE, Judge**

**I CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

**RODERICK T. KENNEDY, Judge (dissenting).**

**KENNEDY, Judge (dissenting).**

{27}     This Opinion unnecessarily expands the physical space into which  "entry" must occur for breaking and entering exactly as we have recently been warned against pursuing by our Supreme Court.  By defining "entry" through a solely judicial construction of the space to which it applies, the Opinion needlessly creates new definition for crimes that are

10

already adequately defined. This Opinion for the first time establishes the outermost perimeter of a structure's space as what defines the scope of the word "entry" for breaking and entering and, presumably, for burglary as well. [Op. ¶ 18]. The Opinion, correctly, in my view, sees ambiguity in the central premise of "what delimits a structure." [Op. ¶ 9] It recognizes that the Arizona legislature has explicitly defined "entry" as an "intrusion . . . inside the external boundaries of a structure or unit of real property" and that Texas's statute prohibits entry of a building "or any portion of a building." *Id.* California accomplished expanding an intrusion within the exterior plane of a building judicially, an accomplishment the Majority now seeks to duplicate. I read *Muqqddin* as a restriction on what the Majority seeks to accomplish in this case. Accordingly, I do not believe *Muqqddin*'s citation to *Valencia* and *Nible* was intended to encourage our changing the use of the word "entry" by expanding the boundary of space to be entered in a way they took pains to criticize. *Muqqddin*, 2012-NMSC-029, ¶ 45. The Supreme Court undid our long-standing tendency to expand the spaces covered by breaking and entering and burglary; embarking again here on that path is unwise and unnecessary. With regard to *Valencia* and *Nible*, our Supreme Court specifically stated no more than that "a burglary can be committed through an open window[,]" that I see as protecting from a penetration of interior protected space, not the outermost plane of structure. *Muqqddin*, 2012-NMSC-029, ¶ 48.

**{28}** Statutes are strictly construed against the state, and we are to resolve doubt about their construction in favor of the rule of lenity. *State v. Bybee*, 1989-NMCA- 071, ¶ 12, 109 N.M. 44, 781 P.2d 316. Criminal statutes may not be made applicable beyond their intended scope if the legislative proscription is plain. *Id.* "We are not to enlarge or amend [a] statute by judicial fiat." *Id.* ¶ 15. "The Legislature is free to define the prohibited space of burglary to include any part of almost anything. But absent a clearer intent to do so, we should not ourselves do that which the Legislature has declined to do. It is for the Legislature alone to define statutory criminal acts, and when it does not do so clearly, the rule of lenity compels judicial restraint." *Muqqddin*, 2012-NMSC-029, ¶ 37. In *Muqqddin*, as here, the acts in that case constituting the crime were "already punished under our statutes as other, lesser crimes." *Id.* ¶ 50 (holding that judicially expanding the legal definition of a crime to include behavior already punished as other, lesser crimes transgresses legislative intent). We recently took this conservative approach instructed by *Muqqddin* to heart, overruling the holding in *State v. Tower* to hold that entry into a commercial establishment in violation of a no trespass notice was not a predicate "entry" sufficient to fulfill the element of commercial burglary. 2002-NMCA-109, ¶ 9, 133 N.M. 32, 59 P.3d 1264, *overruled on other grounds by State v. Archuleta*, 2015-NMCA-___, ¶ 1, ___ P.3d ___ (No. 32,794, Oct. 27, 2014). We should be so restrained in this case.

**Penetration of Mere Outer Perimeters as "Entry" Was Rejected in *Muqqddin***

**{29}** In *Muqqddin*, our Supreme Court reversed a tortured construction of "entry" by pointing out that this Court, over a period of decades, had engaged in an "unprecedented . . . expansion" of the reach of the burglary statute without there being corresponding legislative changes. 2012-NMSC-029, ¶ 1. Our holding that "[a]ny penetration of a

11

vehicle's perimeter is . . . a penetration of the vehicle itself," *id.* ¶ 10 (internal quotation marks and citation omitted), led in the next case to our holding that the "removal of a vehicle's wheels is sufficient to constitute burglary." *State v. Dominguez-Meraz*, No. 30,832, mem. op. *1 (N.M. Ct. App. Sept. 15, 2010) (non-precedential). Relying on previous cases later criticized and overruled by our Supreme Court for expanding the nature of burglary,[7] we again held that " 'entry' in the criminal code requires only the slightest penetration of an interior space." *Sorrelhorse*, 2011-NMCA-095, ¶ 7.

**{30}** I disagree with the Majority's assessment of *Sorrelhorse* as not "address[ing] the question presented here" because it concerns "the extent to which the defendant penetrated the prohibited space." [Op. ¶ 16] *Sorrelhorse* specifically found "entry" into the "interior space" from the defendant's foot being forced inside the door of an apartment and then forcing its occupants even farther back inside. *Id.* By holding "entry" to be into truly interior space, *Sorrelhorse* represents the direction we should follow. Who can dispute that the defendant "entered" the prohibited space by crossing the threshold of the apartment? *Reynolds* was implicitly overruled by *Muqqddin* not on the extent of penetration, which was a hand's depth, but through questions about the validity of what constituted a prohibited structure and because the Legislature did not define a vehicle by its parts. *Muqqddin*, 2012-NMSC-029, ¶¶ 22, 37. For this reason, incorporating a boundary that resembles Texas's "any part thereof" should be avoided.

**{31}** The Supreme Court skeptically recognized that some states include parts of "almost anything" in burglary statutes involving vehicles, but chose to "disagree with the notion that any penetration of a vehicle's perimeter constitutes a penetration of the vehicle itself." *Id.* ¶ 46. *Valencia* and *Nible*, relied upon by the Majority in this case, mirror our previous criticized cases when they "show [that] the requirement of entry is not difficult to satisfy; the slightest penetration will suffice."[8] *Magness v. Super. Ct.*, 278 P.3d 259, 263 (Cal. 2012) (construing *Valencia* and *Nible*). *Magness* specifically operates under that boundary but, in *Valencia*, the defendant damaged the window behind the screen in his attempt to open it. The California Supreme Court in *Magness* made the "observation that no burglary would have occurred in *Valencia* . . . had the defendant removed the window screen but not penetrated into the area behind it[.] *Magness*, 278 P.3d at 265. Wrapping fingers around the screen's frame alone may not be sufficient penetration under *Magness*. On the issue of what

---

[7]*Reynolds*, 1990-NMCA-122, ¶ 37 (noting that any penetration of the interior space, however slight, is sufficient to constitute "entry" within the meaning of the burglary statute); *State v. Tixier*, 1976-NMCA-054, ¶ 11, 89 N.M. 297, 551 P.2d 987 (holding that evidence that an unidentified instrument penetrated one-half inch inside a building is enough to effectuate an entry under the burglary statute).

[8]In subsequent cases in California, even this has been expanded to support a conviction in which a screen was cut from its frame without any further entry. *People v. Hedgecock*, D065977, 2015 WL 570299, at **2-3 (Cal. Ct. App. 2015) (unreported case).

constitutes entry, *Magness* is construction of *Valencia*. "In sum, something that is *outside* must go *inside* for an entry to occur." *Id.* at 264. I am not convinced that *Valencia*'s and *Nible*'s path is persuasive.

{32} The expansion of the nature of structures that could be burgled resulted in our Court's having "gone astray" from the intent of both the common law and statutory roots of burglary according to our Supreme Court. We were thus criticized for creating a crime that enhanced "any crime committed in any type of structure or vehicle, as opposed to . . . punishment for a harmful entry." *Muqqddin*, 2012-NMSC-029, ¶ 3. We might do well to follow the Iowa Supreme Court, which restrained itself from enlarging the inclusion of curtilage, including front stoops and driveways into the definition of "occupied structure" because the legislature had not previously done so, stating: "We do not construe statutes so as to render a part of it superfluous, but presume our legislature included every part of the statute for a purpose and intended each part to be given effect." *State v. Pace*, 602 N.W.2d 764, 771 (Iowa 1999). Iowa sets a better example for us than California. The facts should fit the law. The law should not move to encompass the facts. From the progression through our vehicular burglary cases, I conclude that "entry" is not penetration of a perimeter to the slightest degree, and we should avoid expanding the protected area of a structure's interior in the absence of legislative direction.

**The Fact That Defendant's Conduct Is Adequately Proscribed By Other Statutes Should Also Require Our Forebearance**

{33} *Muqqddin* also cautions us against blurring the line between similar, but different, offenses with such expansions. 2012-NMSC-029, ¶ 50. It pointed out that the act of perforating a gas tank for its contents was more likely the misdemeanor of tampering with a motor vehicle. *Id.* ¶ 51.

{34} Burglary traditionally entailed a home invasion, and the crime has evolved to "protect occupants against the terror and violence that can occur as a result of such an entry." *Id.* ¶ 3. The privacy interest protected by burglary statutes is related to the terror of having an intruder inside of one's home, into which the entry is fully accomplished. This Opinion recognizes this privacy interest and that Stamper's reaction to Defendant's actions is squarely within these senses of invasion, terror, and concern for possible personal violence that the burglary statute is designed to address. It is there the degree of "entry" falls short. [Op. ¶¶ 3, 10]. Certainly, Defendant *attempted* an entry. But, the California Supreme Court stated, more specifically, "[t]he laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety." *Magness*, 278 P.3d at 261 (internal quotation marks and citation omitted). This case falls short of that standard. Breaking and entering differs from burglary because it protects a lesser interest than burglary, characterized by its inclusion in Article 14 of Chapter 30 of our statutes entitled "Trespass." *Muqqddin* counsels us to have a disinclination to expand a statute when others are adequate to the purpose at hand. 2012-NMSC-029, ¶ 40 (distinguishing burglary as protecting rights

13

that exist beyond "other laws" intended to deter trespass and theft). Attempt is the taking an act in furtherance of an intention to commit a crime. NMSA 1978, § 30-28-1 (1963). Defendant did not complete the act of entry and, given his likely intent and location of his crime, it is attempted burglary, not breaking and entering, that accounts for what the Majority says protects a heightened interest against "invasion of privacy" and security to justify their new boundary. [Op. ¶ 10]. If the Majority follows the conservative approach given us by *Muqqddin*, then Defendant here should be criminally responsible for attempted residential burglary or, perhaps, attempted breaking and entering, criminal trespass, and criminal damage. The distinction is notable, and the existing criminal statutes are fully adequate as written.

**Defining New Ambiguous Structures Damages the Plain Meaning of "Entry"**

{35}     The Majority concedes that the "any part of" a structure language in the breaking and entering statute applies to the "breaking" portion of the statute and not the "entry." [Op. ¶ 9]. The Opinion seems desirous of now extending "entry" to any penetration of "some sort of enclosure." [Op. ¶ 11]. To do so successfully requires steps not yet legislated: (1) "structure" (protected space) must be further defined by its outermost perimeter; and (2) entry must be found either as a breaking of a perimeter, however slight, without clear entry of protected interior space, or an actual crossing of the threshold to be present inside of the structure. In *Muqqddin*, our Supreme Court rejected judicial approach equating entry into "any portion" of a structure with entry into the structure itself. 2012-NMSC-029, ¶ 38. Thus, I urge that the Majority's holding inappropriately expands the protected area to "any portion" rather than the interior of the structure by its holding that breaking the outer perimeter and, no more, constituted "entry."

{36}     *Muqqddin* also cautions us that the plain meaning rule applies to keep the word "entry" free of expansion by expanding those things that might be entered, since the Legislature's existing statutes work without doing so, and judicial restraint forecloses our meddling in such an instance. *Id.* ¶ 38. Our Supreme Court rejected law from other jurisdictions, including Texas, that allow entry to be found when "the defendant crosses some imaginary plane" and concluded that "the concept of an imaginary plane is ambiguous, creating more questions than it answers and [is] subject to prosecutorial abuse." *Id.* ¶¶ 46, 47. Our Supreme Court had no problem, however, finding that entry could be accomplished "through an open window." *Id.* ¶ 48. The Opinion in this case consequently begs more questions than it answers. *Muqqddin* criticized including in "entry" the acts of passing a hand over a flatbed truck to break the plane of its outer edge and stealing a shutter attached to a house that required no entry, but was within the line between eaves and foundation to therefore "break[] the close." *Id.* ¶ 47. Here, the Opinion concludes that "the plain language of the breaking and entering statute sheds little 1ight on the Legislature's intent as to the issue before us[.] . . . [W]hether the space between a window screen and an open window is protected space" under the statute. [Op. ¶ 9]. *State v. Kindred*, based on Arizona's statute that includes the plane of a building's outer perimeter, acknowledged that their statute "differs in several ways from the common law[.]" 307 P.3d 1038, 1041 (Ariz. Ct. App.

2013).  The *Kindred* Court also commented that it had found "no authority . . . expressly discussing whether that threshold has any particular depth and . . . whether entry into the threshold, without more, constitutes entry into the structure." *Id.*  The Arizona *legislature* made the threshold a plane and required no further entry than crossing it.

**{37}**     Our Legislature is as apt as any in Texas and Arizona to expand what our Supreme Court counsels us should be left to them alone.  In an example from *Magness* of how parsing "entry" can beggar judicial interpretation, an intruder who approached and opened an unlocked sliding glass door on a house's patio would displace air inside, but unless a part of him or something he carried "crossed the door's threshold," no burglary would occur. 278 P.3d at 264.  He could be "charged with attempted burglary, but not with a completed burglary." *Id.*  The case was silent about the effect if the door handle were within the outer perimeter of the door frame, or a finger was inside the outer edge of the door, but not inside the full width of the threshold.  Such parsing is best not reserved by courts.  2012-NMSC-029, ¶ 47.  Because Defendant did not enter Stamper's house, he is, depending on what might be proven of his intent, guilty of no more than an attempt to commit either breaking and entering or burglary, along with the other crimes he most certainly committed, involving trespass or vandalism.

**The Case Law Does Not Follow *Valencia* and *Nible***

**{38}**     I also conclude that *Muqqddin*'s citation to *Valencia* and *Nible* was for, as it stated, no more than pointing out that a structure's composition relates to an expectation of privacy. Nowhere did *Muqqddin* attempt to expand that space using these cases, and the remainder of the Supreme Court's discussion, I believe, favors my view.  The Majority places reliance on *Valencia*, in which the California Supreme Court concluded that, because a window screen is part of the outer boundary of a building, the area behind the window screen is inside the premises, and entry that is just barely inside the premises is sufficient.[9] *Valencia* has been cited only three times by other states—Colorado, Hawaii, and Nevada—none of which utilize its holding expanding boundaries to outside perimeters.  Colorado used *Valencia* in *People v. Gonyea*,[10] where the defendant reached through the broken window to open a door.  In Hawaii, where no statutory definition of "entry" existed, the Supreme Court vacated a conviction for the lack of its definition in a jury instruction.  *Valencia* was

---

[9]*Valencia* itself frequently conflated breaking with entering in its review of precedent. Many cases cited in *Valencia*, as supporting the view that penetration of a screen without entering the window behind it are not particularly apposite, since the defendants in *Bowers*, *Gatewood*, *Jenkins*, and *Conners* involved actual entry by the defendant of the inside of the structure.  *Ortega* and *Woods* relied on Texas's "any portion" statute. *Crease* was on point, while *Mazer* inferred intent from cutting a screen, but entry was not mentioned.

[10]195 P.3d 1171, 1174 (Colo. App. 2008).

mentioned only in the context of whether a stream of mace an angry father sprayed into a car over the threshold of the car's window constituted a felonious "entry."[11] In Nevada, *Valencia* was mentioned by way of evaluating probable cause for a charge based on circumstantial evidence. *Jones v. State*, 238 P.3d 827 (Nev. 2008). The older *Nible* case has been mentioned in other states for other propositions than entry past the outermost perimeter. In Colorado, mentioned above, and Ohio, where the boundary issue was mentioned, there was actual insertion of the defendant's arm through a window. *State v. McIntosh*, 549 N.E.2d 1191 (Ohio 1990). *Burke*, from Massachusetts, is squarely with *Valencia.* Other cases are not nearly as supportive.

{39}     *Chappell*, cited by the Majority, involved the defendant reaching through the screen to raise the window inside. [Op. ¶ 15] *Kindred* depends on Arizona's specific statute and found no other authority for the boundary it supported. The Majority, citing two of the cases footnoted in *Valencia*, is also unavailing. *Barrick* stated that the defendant rattling doors was no entry, but that he would have been guilty of attempted burglary if Indiana had such a statute. 119 N.E.2d at 553. *Gatewood* actually held that the defendant's full entry into an enclosed porch attached to the house and the space between the screen door and the inner door were both a sufficient entry into the dwelling proper. 221 P.2d at 394.

{40}     Many other states have not expanded boundaries outward. Iowa and Hawaii, mentioned above, declined to undertake a judicial expansion of their statute. Most states seem to depend on crossing a "threshold" to find entry. Charles E. Torcia, *Wharton's Criminal Law* § 322 (15th ed. 2014) ("There is an entry when any part of the defendant's person passes the line of the threshold."). Many states have determined that passing the "line of the threshold" with all or part of the body into the *interior* perimeter of the structure is entry by the defendant. *See State v. Liberty*, 280 A.2d 805, 808 (Me. 1971) (requiring "intrusion into the building of any part of the body"); *Price v. Commonwealth*, 112 S.W. 855, 855 (Ky. Ct. App. 1908) (holding that breaking without entry, however slight, is not burglary); *State v. Peterson*, 881 P.2d 965, 969 (Utah Ct. App. 1994) ("A simple passage by any part of the body over the door's threshold can amount to entry[.]"). Intrusion into the building is required in New Jersey, Missouri, Florida, Louisiana, Illinois, Alabama, and North Carolina. *See State v. O'Leary*, 107 A.2d 13, 15 (N.J. Super. Ct. 1954); *State v. Pigques*, 310 S.W.2d 942, 945 (Mo. 1958) ("Literally, 'entry' is the act of going into the place after a breach has been effected[.]"); *Miller v. State*, 187 So. 2d 51, 53 (Fla. Dist. Ct. App. 1966); *State v. Conner*, 2008-0473 (La. App. 4 Cir. 10/1/08); 996 So. 2d 564, 568 (holding that "entry" requires passing the line of the threshold and "intrud[ing], even momentarily, into the structure"); *People v. Davis*, 279 N.E.2d 179, 181 (Ill. App. Ct. 1972) (requiring "intru[sion] into the building"); *State v. McCall*, 4 Ala. 643 (Ala. 1843) (holding that reaching through shutters but not the window within was not "entry"); *State v. Watkins*, 720 S.E.2d 844, 850 (N.C. Ct. App. 2012) (holding that no entry inside residence when only instrument that broke window crossed threshold to be "inside the residence").

---

[11]*State v. Faria*, 60 P.3d 333, 340 (Haw. 2002).

**CONCLUSION**

**{41}** I conclude that Defendant's actions did not sufficiently "enter" Stamper's house for purposes of breaking and entering. I believe that his conduct is adequately covered by other statutes and that the cause of justice would not suffer if he were convicted of the proper crime(s). Breaking and entering and attempted residential burglary are fourth-degree felonies; the legislated punishment is the same for both.[12] Attempted breaking and entering together with criminal trespass and criminal damage to the screen would be an adequate combination to accurately punish him. When facts fit snugly within existing statutes, bending another statute to fit stretches the law's reach past its legislative intent. *Muqqddin*, 2012-NMSC-029. ¶¶ 50-51.

**{42}** I would prefer that this Court decline to expand the extent of protected spaces. The Majority concludes early on that the language of the statute does little to help us divine legislative intent regarding whether the space between the screen and window is prohibited space. [Op. ¶ 9]. The Opinion recognizes that our statute does not state that entry into "any part of a structure will suffice." [*Id.*] There is no "plain meaning" in our statute to define the space protected from "entry" and that ambiguity requires our exercising the rule of lenity to Defendant's benefit in this case. Our previous attempts to expand the reach of protected space have been criticized. Granted, California and Massachusetts in *Valencia* and *Burke* have held in accord with where this Opinion takes us. *Kindred* is based upon the Arizona statute already distinguished from ours, but bases the crime on intruding into a boundary, as opposed to a structure, which I would regard as just the position we took in *Rodriguez* that was rejected by our Supreme Court in *Muqqddin*. Other out of state cases cited by the Majority are not so illuminating. I would prefer, in light of *Muqqddin*, to wait for it to come from somewhere else.

**{43}** I therefore most respectfully dissent.

_____
**RODERICK T. KENNEDY, Judge**

---

[12]Section 30-14-8(B) (stating that breaking and entering is a fourth-degree felony); § 30-16-3(A) (stating that burglary of a dwelling is a third-degree felony); § 30-28-1(C) (attempting to commit a third-degree felony is a fourth-degree felony).

17