IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2016-NMSC-011

Filing Date: February 25, 2016

Docket No. S-1-SC-35298

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

ANTHONY HOLT,

      Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Fernando R. Macias, District Judge

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Jacqueline R. Medina, Assistant Attorney General
Santa Fe, NM

for Respondent

OPINION

NAKAMURA, Justice.

{1}    Anthony Holt had partially removed a window screen from a residential dwelling when he was detected by the homeowner and fled. In the process of removing the screen, he placed his fingers behind the screen and inside the outer boundary of the home. Holt was subsequently arrested and charged with breaking and entering, in violation of NMSA 1978, Section 30-14-8 (1981). An "unauthorized entry" is an essential element of this offense. Section 30-14-8(A). We must decide whether Holt's conduct constitutes an "entry." It does. Accordingly, we affirm Holt's conviction. While we affirm the judgment of the Court of

1

Appeals, we issue this opinion to clarify the appropriate analysis for resolution of the issue presented.

## I. BACKGROUND

**{2}** We view the evidence presented in the light most favorable to the verdict. *State v. Treadway*, 2006-NMSC-008, ¶ 7, 139 N.M. 167, 130 P.3d 746. So viewed, on the afternoon of December 19, 2010, Carolyn Stamper was home alone when she heard the doorbell ring. She was not expecting company. Shortly after the unanticipated ring, she heard some "wrestling at the front door." She moved slowly towards the door and peeped through the peephole in the front door. She saw no one.

**{3}** Stamper then heard a noise emanating from the living-room window which was about seven feet away from her position. The sound was like "metal on metal" or a cat "clawing at the screen." She walked towards the window. The curtain was closed, but not completely; there was a gap about four inches wide. The window was open, raised from the bottom, also about four inches. Between the curtains, Stamper observed a man, later identified as Holt, removing the screen from her window. Stamper testified that Holt

> had the screen halfway off the window, and he had his hand on each side of the screen, and he was twisting it and turning it and looking down. He was looking down at the bottom part of the screen. He was trying to get the screen off. It wasn't completely off, but it was bent out away from the house and he was working the screen like this.

Upon further questioning, Stamper clarified that Holt's fingers were over the screen and the palms of his hands were at its edges. He had pulled the screen out of its track "and bent it about maybe half way down." It was crooked at the top where Holt had "worked" it, but it was still in the groove at the bottom. As a result of Holt's conduct, the screen was "pretty well destroyed."

**{4}** Because Holt's attention was focused downward, he did not initially see Stamper. At some point, however, he looked up and saw her. Their faces were only about two and a half feet apart. When Holt saw Stamper watching him, his "eyes bugged out." He said "Oh, I'm sorry," and then promptly fled.

**{5}** Holt was arrested and charged by an amended indictment with breaking and entering. At trial, after the State rested, Holt moved for a directed verdict. He argued that no entry had occurred because he was interrupted by Stamper and "never did get inside." The district court denied the motion, finding that the State had presented sufficient evidence to proceed. Holt presented no evidence.

**{6}** The jury found Holt guilty of breaking and entering. He was sentenced to five years and six months—eighteen months for the breaking-and-entering violation and a four-year

2

habitual-offender enhancement—followed by one year of parole.

**{7}** Holt appealed to this Court. He argued that the district court incorrectly construed the term "entry" in Section 30-14-8(A) and claimed that the evidence was insufficient to sustain his conviction because he had attempted only to remove the window screen and had not entered Stamper's residence. The Court of Appeals affirmed Holt's conviction in a divided opinion. *State v. Holt*, 2015-NMCA-073, 352 P.3d 702, *cert. granted*, 2015-NMCERT-____ (No. 35,298, June 19, 2015). We granted Holt's petition for a writ of certiorari—exercising our jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34–5–14(B) (1972)—to decide whether Holt entered Stamper's residence, for purposes of New Mexico's breaking and entering statute, by placing his fingers behind a window screen and beyond the outer boundary of Stamper's home.

## II.    DISCUSSION

**{8}** Holt contends that only penetration of an interior protected space, not the outermost plane of a structure, constitutes an "entry" for purposes of the breaking-and-entering statute. The space between a screen and window, he argues, is not interior space. Thus, he claims that his conduct did not constitute an "entry" for purposes of Section 30-14-8(A). Based on his interpretation of the statute, Holt argues that there was insufficient evidence presented to support the conviction. The State responds that the Legislature did indeed intend penetration of a window screen to constitute an "entry" under Section 30-14-8(A) because a window screen forms the outer barrier of a structure and people reasonably rely on window screens to protect their possessory rights. Accordingly, the State contends that the evidence was sufficient to support the conviction.

### A.    Standard of Review

**{9}** Whether Holt's conduct constituted an "entry" for purposes of Section 30-14-8(A) is a question of statutory construction this Court reviews de novo. *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868 (citation omitted).

### B.    Definition of "entry" in Section 30-14-8(A)

**{10}** The primary goal in construing a statute is to "ascertain and give effect to the intent of the Legislature." *State v. Tafoya*, 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (internal quotation marks and citation omitted).

**{11}** Section 30-14-8(A) provides as follows:

> Breaking and entering consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where entry is obtained by fraud or deception, or by the breaking or dismantling of any part of the vehicle, watercraft, aircraft, dwelling or other

3

structure, or by the breaking or dismantling of any device used to secure the vehicle, watercraft, aircraft, dwelling or other structure.

**{12}** It is well-settled that words in a statute take their ordinary meaning absent legislative intent to the contrary. *State ex rel. Maloney v. Sierra*, 1970-NMSC-144, ¶ 42, 82 N.M. 125, 477 P.2d 301. The term "entry" is not defined in Section 30-14-8. The first question we must decide, then, is whether the ordinary meaning of "entry" resolves the statutory interpretation question before us. As described below, ascribing the term "entry" its ordinary meaning does not dispose of this case.

**{13}** According to one commonly used dictionary, "entry" is "[t]he action of coming or going in." V *The Oxford English Dictionary* 308 (2d ed. 1991). Another dictionary defines "entry" as "[t]he act or an instance of entering." *The American Heritage Dictionary of the English Language* 596 (5th ed. 2011). A leading legal dictionary defines "entry" as "[t]he act, right, or privilege of entering real property." Entry, *Black's Law Dictionary* (10th ed. 2014). All of these definitions give rise to additional and redundant definitional questions: if "entry" is going "in," what is "in"? To state that "entry" is "entering" is no help at all. Additionally, how does one define the boundaries of the space entered? Assuming we can discern what entering is, and "entry" is entering real property, where does the real property begin or end?

**{14}** We cannot rely on the ordinary usage of the term "entry" to resolve the instant issue of statutory interpretation. The majority opinion of the Court of Appeals appears to have understood this and appropriately concluded that it was necessary to look to the purpose of the breaking-and-entering statute to fashion a functional definition of the term "entry." *Holt*, 2015-NMCA-073, ¶ 9. The majority opinion framed the issue as "whether the space between a window screen and an open window is protected space under the statute." *Id.* This framing of the issue is problematic. It suggests that the space between the screen and the window is a separate and independent dimension of space apart from the further interior space that comprises Stamper's residence. The issue is more straightforward: did Holt's conduct constitute entry into Stamper's residence? To resolve this question we must determine where the boundaries of the home begin and end, and the purposes underlying the breaking-and-entering statute are our guide. *See State v. Rivera*, 2004-NMSC-001, ¶ 12, 134 N.M. 768, 82 P.3d 939 ("Application of the plain meaning rule often does not end the analysis when construing a statute. Rather, the rule is a tool used by courts during the course of seeking and effectuating the legislative intent underlying the statute." (citation omitted)); *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352 ("[Where] one or more provisions giv[e] rise to genuine uncertainty as to what the legislature was trying to accomplish . . . it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute.").

**{15}** "New Mexico's breaking-and-entering statute is itself grounded in common law burglary." *State v. Rubio*, 1999-NMCA-018, ¶ 13, 126 N.M. 579, 973 P.2d 256 ("'New Mexico's breaking and entering statute is a type of statutory burglary.'" (quoting UJI 14-

1410 NMRA committee commentary)). As such, we look to our treatment of the burglary statute to discern the purposes behind the enactment of the breaking-and-entering statute.

**{16}** Our burglary statute protects the "right to exclude," a right that "has been described as perhaps the most fundamental of all property interests." *State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 41, 285 P.3d 622 (internal quotation marks and citation omitted). The right to exclude "implies some notion of a privacy interest." *Id.* ¶ 42 (citation omitted). "It is the invasion of privacy and the victim's feeling of being personally violated that is the harm caused by the modern burglar, and the evil that our society is attempting to deter through modern burglary statutes." *Id.* (citation omitted). "The privacy interest that our modern burglary statute protects is related to, though broader than, the security of habitation." *Id.* ¶ 43. That privacy interest extends to all enclosed, private, prohibited spaces. *See id.* ¶¶ 44-45. Thus, an "entry," for purposes of the breaking-and-entering statute, occurs whenever there is an invasion into an enclosed, private, prohibited space. *See* Section 30-14-8(A). But still we must ask how do we define the boundaries of these spaces.

**{17}** As we explained in *Muqqddin*, "[i]t is the nature of the enclosure that creates the expectation of privacy. Enclosure puts the public on notice." 2012-NMSC-029, ¶ 45. To define the boundaries of enclosures, we embraced the following test: "'[t]he proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions.'" *Id.* (alteration in original) (quoting *People v. Nible*, 247 Cal. Rptr. 396, 399 (Ct. App. 1988), *holding modified by People v. Valencia*, 46 P.3d 920, 924-27 (Cal. 2002)).

**{18}** Based on the foregoing, we determine that putting one's fingers behind a window screen affixed to a residential dwelling is an intrusion into an enclosed, private, prohibited space and constitutes an "entry" for the purposes of New Mexico's breaking-and-entering statute. Section 30-14-8(A). It is reasonable for the citizens of New Mexico to expect that their window screens afford them protection from unauthorized intrusions. As the *Nible* Court explained, a window screen "is not to be considered as a mere protection against flies, but rather as a permanent part of the dwelling," and, as such, "a reasonable person would believe a window screen provides some protection against unauthorized intrusions." 247 Cal. Rptr. at 399 (internal quotation marks and citation omitted).

**{19}** The law has long been settled in New Mexico that "entry," for purposes of the burglary statute, occurs where there is "[a]ny penetration, however slight, of the interior space . . . ." *State v. Tixier*, 1976-NMCA-054, ¶ 12, 89 N.M. 297, 551 P.2d 987. In *Tixier*, the Court of Appeals held that a one-half inch penetration into a building by an unidentified instrument was sufficient to constitute an entry. *See id.* In *State v. Sorrelhorse*, 2011-NMCA-095, ¶¶ 4, 8, 150 N.M. 536, 263 P.3d 313, the defendant forcibly entered an apartment; however, the entry consisted of nothing more than the defendant's foot going in "a little way." As noted, our breaking-and-entering statute is intertwined with our burglary statute. The Uniform Jury Instruction for breaking and entering directs that, where "entry is in issue," the court is to instruct the jury that "the least intrusion constitutes an entry." UJI 14-

5

1410 & n.2. To the extent *Sorrelhorse* and *Tixier* suggest that the least intrusion must be into some "interior space," that space simply refers to the area beyond the boundary that a reasonable person would expect to afford them protection from unauthorized intrusions. *See Sorrelhorse*, 2011-NMCA-095, ¶ 7; *Tixier*, 1976-NMCA-054, ¶ 12; *cf. Nible*, 247 Cal. Rptr. at 399 ("[W]hen a screen which forms the outer barrier of a protected structure is penetrated, an entry has been made for purposes of the burglary statute.").

## C. Sufficiency of the Evidence

**{20}** "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (citations omitted). In that light, the Court determines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "[T]he [j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 (second alteration in original) (internal quotation marks and citation omitted).

**{21}** To convict Holt of the breaking-and-entering charge, the jury was instructed that it had to find beyond a reasonable doubt that "1. The defendant entered [Stamper's address] without permission; the least intrusion constitutes an entry; 2. The entry was obtained by the dismantling of a window screen; 3. This happened in New Mexico on or about the 19th day of December, 2010."

**{22}** The only element for which Holt contends there was insufficient evidence is the entry instruction. Stamper testified that she was two and a half feet from Holt when she saw him removing the screen from her window. She testified that Holt's fingers were over the screen, i.e., beyond the boundary created by the window screen. Holt concedes that Stamper so testified. Therefore, the evidence was sufficient to support the conviction.

## III. CONCLUSION

**{23}** Holt placed his fingers behind Stamper's window screen. The screen marked the outer boundary of Stamper's home. Thus, Holt entered Stamper's residence for purposes of Section 30-14-8(A). Accordingly, we affirm.

**{24}   IT IS SO ORDERED.**

_____

**JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**

_____

6

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**