This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35934**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DARYL RODRIGUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Henry R. Quintero, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Daryl Rodriguez appeals his convictions for aggravated battery with a deadly weapon, in violation of NMSA 1978, Section 30-3-5 (1969) and tampering with evidence, in violation of NMSA 1978, Section 30-22-5 (2003). Defendant argues that (1) jury instructions pertaining to his claim of self-defense were incorrect, giving rise to fundamental error; (2) the evidence of aggravated battery with a deadly weapon and tampering with evidence was insufficient; and (3) Defendant received ineffective

assistance of counsel. We affirm Defendant's conviction for aggravated battery but reverse his conviction for tampering with evidence.

**BACKGROUND**

**{2}** The following facts are not in dispute. Defendant, accompanied by three women, arrived on the property of Judah Mondello in the early morning hours of June 13, 2015. Wyatt Hawkins (Victim) confronted Defendant. An altercation between Defendant and Victim ultimately resulted in Defendant shooting Victim in the leg.

**{3}** Although Defendant testified at trial that he "threw the gun [used to shoot Victim] towards [a] 1200 gallon . . . water tank, and then [threw] the clip . . . towards [a car on the property,]" the weapon was never found.

**{4}** Defendant was convicted of aggravated battery with a deadly weapon and tampering with evidence following a jury trial. He appeals.

**DISCUSSION**

**I. The Jury Instructions Did Not Give Rise to Fundamental Error**

**{5}** Defendant argues that the jury instructions give rise to fundamental error for three reasons: (1) the self-defense instruction should have stated "that [Defendant] acted 'because of that fear' "; (2) a "no duty to retreat" instruction was required; and (3) the aggravated battery instruction did not state that "[t]he defendant did not act in self-defense." We begin by setting forth our standard of review and then address each of Defendant's arguments in turn.

**A. Standard of Review**

**{6}** "The propriety of the jury instructions given by the district court is a mixed question of law and fact requiring de novo review." *State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297. We review unpreserved claims of error in jury instructions de novo. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. We first "seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* "If we find error, our obligation is to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). "[W]e [will] not uphold a conviction if an error implicate[s] a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* ¶ 18 (internal quotation marks and citation omitted).

**B.     Omission of "Acted Because of That Fear"**

**{7}**     Defendant argues that omission of the language "[Defendant] acted 'because of that fear'" in the self-defense instruction left the jury "with an inaccurate instruction on self-defense law and therefore unable to properly consider both his defense and the State's burden to disprove self-defense." Although we agree with Defendant that the omission was an erroneous deviation from UJI 14-5181 NMRA (2009, amended 2018),[1] we do not believe the error warrants reversal.

**{8}**     Defendant has not directed us to any case law where the omission of this element was found to be reversible error, much less fundamental error, and we assume no such case exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). And we see no prejudice to Defendant from the instruction as given. Acting because of fear is one of the three elements of self-defense. *See State v. Denzel B.*, 2008-NMCA-118, ¶ 6, 144 N.M. 746, 192 P.3d 260 ("In order for the defendant to be entitled to a self-defense instruction, there must be evidence that the defendant was put in fear by an apparent danger of immediate bodily harm, that his actions resulted from that fear, and that the defendant acted as a reasonable person would act under those circumstances." (alterations, internal quotation marks, and citation omitted)). The State can defeat a self-defense claim by disproving any one of those elements beyond a reasonable doubt. Thus, by depriving the State of the opportunity to prove that Defendant had not acted "because of [Defendant's] fear," the instruction given in this case *increased* the burden on the State, leaving it only two opportunities to disprove self-defense. Defendant has not persuaded us that this omission rose to the level of fundamental error.

**C.     Omission of "No Duty to Retreat"**

**{9}**     Defendant argues that the omission of the "no duty to retreat" instruction left the jury unable to consider the reasonableness of his actions. We disagree. A defendant is entitled to a jury instruction on the defendant's theory of the case only if the trial evidence supports the instruction. *See State v. Baxendale*, 2016-NMCA-048, ¶ 21, 370 P.3d 813 (recognizing that "failure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction"). "Where the evidentiary basis for the [no-retreat] instruction has been laid, [the instruction] informs jurors of what is reasonable" under the "reasonableness" prong of the self-defense instruction. *State v. Anderson*, 2016-NMCA-007, ¶ 14, 364 P.3d 306. However, it is not error to omit the instruction where that basis has not been established. *Candelaria*, 2019-NMSC-004, ¶ 35. Defendant does not point to anything in the record to demonstrate that no-duty-to-retreat was at issue in this case. Nor have we found any reference to retreat in Defendant's or any witness's testimony, or in opening or closing arguments. Without such testimony, retreat was not at issue, "and thus, no

---

1All references to UJI 14-5181 are to the 2009 version, which was in effect at the time of Defendant's trial.

further clarification of *reasonable* under [the self-defense instruction] was warranted." *Id.* ¶ 39.

### D. Omission of Self-Defense and Unlawfulness in Aggravated Battery Instruction

**{10}** Finally, Defendant argues that fundamental error occurred because the aggravated battery elements instruction did not require the jury to find that "[D]efendant did not act in self-defense." Although it was error to omit this language, the error was not fundamental.

**{11}** Defendant is correct that the aggravated battery instruction that the jury received did not include language that our uniform jury instructions require. Specifically, the instruction should have required the State to prove beyond a reasonable doubt that Defendant's act was unlawful because "[D]efendant did not act in self[-]defense." UJI 14-5181 Use Note 1.

**{12}** However, we do not believe that the omission of this language amounted to fundamental error because the self-defense instruction clearly placed the burden of disproving self-defense on the State. *See State v. Cunningham*, 2000-NMSC-009, ¶ 24, 128 N.M. 711, 998 P.2d 176 (concluding that "when the jury receive[s] a separate . . . instruction on self-defense that provide[s] the jury with the opportunity to decide the issue of unlawfulness the omission from the elements section of a reference to self-defense or unlawfulness . . . does not constitute fundamental error"); *State v. Armijo*, 1999-NMCA-087, ¶ 26, 127 N.M. 594, 985 P.2d 764 (holding that jury instructions are "sufficient if [the unlawfulness or self-defense element] is in the defense instruction, even if not in the elements instruction, provided that no other instruction causes the defense instruction to be confusing or meaningless"). The given self-defense instruction shifted the burden to the State: "The burden is on the State to prove beyond a reasonable doubt that the Defendant did not act in self[-]defense. If you have a reasonable doubt as to whether the Defendant acted in self[-]defense, you must find the Defendant not guilty." When the self-defense instruction and aggravated battery instruction are read together, it is clear that the State had the burden of disproving self-defense beyond a reasonable doubt. *See State v. Montoya*, 2015-NMSC-010, ¶ 25, 345 P.3d 1056 ("Jury instructions are to be read and considered as a whole and when so considered they are proper if they fairly and accurately state the applicable law." (alteration, internal quotation marks, and citation omitted)). We conclude that, under the jury instructions given in this case, "a reasonable juror would understand that an acquittal based on self-defense is inconsistent with a guilty verdict" for aggravated battery. *Cunningham*, 2000-NMSC-009, ¶ 17.

### II. The Evidence Is Sufficient to Sustain Defendant's Aggravated Battery Conviction but Insufficient to Sustain His Tampering with Evidence Conviction

**{13}** Defendant argues that the evidence was insufficient to convict him of either aggravated battery with a deadly weapon or of tampering with evidence. We disagree with his first argument but agree with the second.

**{14}** When reviewing the sufficiency of the evidence, we "scrutin[ize] . . . the evidence and supervis[e] . . . the jury's fact-finding function to ensure that . . . a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the [conviction]." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). We "do[] not weigh the evidence and may not substitute [our] judgment for that of the [jury] so long as there is sufficient evidence to support the [conviction]." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. However, we will neither speculate nor "sanction a view that assumes the worst about human nature" because, in doing so, we would be disregarding "an essential message of the presumption of innocence." *State v. Mariano R.*, 1997-NMCA-018, ¶ 7, 123 N.M. 121, 934 P.2d 315. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Holt*, 2016-NMSC-011, ¶ 20 (alterations, internal quotation marks, and citation omitted).

## A.    Aggravated Battery

**{15}** Defendant argues that "the evidence [of aggravated battery] is legally insufficient based on an interpretation of the law not reflected in the jury instructions." We are not persuaded because, as explained above, the jury instructions did not relieve the State of its burden of disproving self-defense. Alternatively, Defendant argues that it was clear that he was acting in self-defense when he shot Victim. We disagree.

**{16}** Defendant identifies evidence in the record that he claims supports his theory of self-defense, but the jury was free to reject that theory based on evidence presented by the State. Defendant argues that Victim's statement—"You need to leave the property[] or I'm going to assault you[,]"—combined with Victim "rush[ing] at [Defendant] with what [Defendant] thought was a sword"; Victim's admission that he pushed Defendant's companion; and Defendant first firing a warning shot before shooting Victim, make clear that Defendant's actions were warranted under a theory of self-defense. However, the State refuted the self-defense theory by presenting evidence that Victim was walking away from Defendant and was not carrying a weapon when he was shot. Based on the testimony presented at trial, the jury could have reasonably determined that there was not "an appearance of immediate danger of bodily harm to [D]efendant as a result of being rushed by [Victim] while [Victim] was holding an object that could be used as a deadly weapon." *See Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). Sufficient evidence supports Defendant's conviction for aggravated battery with a deadly weapon.

## B. Tampering With Evidence

**{17}** Defendant argues that there is insufficient evidence to sustain his conviction for tampering with evidence because there was no evidence that he "hid" the gun used to shoot Victim. We agree.

**{18}** To obtain a conviction for tampering with evidence, the State must prove that a defendant committed an "overt act with respect to the evidence in question."[2] *State v. Arrendondo*, 2012-NMSC-013, ¶ 31, 278 P.3d 517. Specifically, the State must prove that that the defendant "destroy[ed], chang[ed], hid[], plac[ed] or fabricat[ed]" the pertinent evidence. Section 30-22-5. Although the statute lists four other alternative elements, the jury instruction given in this case permitted the jury to return a guilty verdict on the tampering charge only if it found that Defendant "hid" the gun he used to shoot Victim. Consequently, we may uphold Defendant's conviction only if there is sufficient evidence to support the jury's finding that he did so. *See Holt*, 2016-NMSC-011, ¶ 20. "Hide," when used as it was in the given instruction, means "to put out of sight." *Hide*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/hide#synonym-discussion (last visited Nov. 11, 2019).

**{19}** The record contains no evidence that Defendant hid the gun. Defendant testified that, after he shot Victim, he "threw" or "tossed" [] the gun "towards [a] 1200-gallon . . . water tank" located on the scene of the crime. Another witness testified that she had seen Defendant "throw[] something towards some abandoned car" before Defendant left the property on which the shooting occurred. We do not see how evidence that Defendant, while still at the crime scene, "tossed" or "threw" the gun towards either a water tank or an abandoned car gives rise to a reasonable inference that Defendant "put [the gun] out of sight."

**{20}** Noting that the gun was never recovered, the State argues that Defendant "plainly . . . hid it well enough . . . that it could not be found"—in other words, that Defendant's overt act in throwing the gun towards the water tank constituted "hid[ing]" the gun because the gun was never found. We disagree. Our Supreme Court has repeatedly recognized that a defendant cannot be convicted of tampering with evidence "simply because evidence that must have once existed cannot now be found." *State v. Guerra*, 2012-NMSC-027, ¶ 16, 284 P.3d 1076; *see State v. Silva*, 2008-NMSC-051, ¶ 19, 144 N.M. 815, 192 P.3d 1192. Where, as here, the State's only theory is that Defendant "hid" the evidence, proof of an overt act that does not constitute "hiding" cannot support a conviction for tampering with evidence merely because that evidence was never found.[3] Because the evidence is insufficient to sustain Defendant's conviction for tampering with evidence, we must reverse that conviction.

---

2Although the State must also prove that Defendant committed the overt act "with the intent to disrupt the police investigation[,]" *Arrendondo*, 2012-NMSC-013, ¶ 31, Defendant does not challenge the sufficiency of the evidence pertaining to his intent on appeal.

3Although other theories were available to the State—including that Defendant "placed" the gun—the State did not pursue those theories at trial. On appeal, the State suggests that we might "view [Defendant's] actions as

### III. Defendant Has Not Presented a Prima Facie Case of Ineffective Assistance of Counsel

**{21}** Defendant argues that he received ineffective assistance of counsel because his attorney had an attorney-client relationship with one of the witnesses in the case and for various other reasons. Because Defendant has not presented a prima facie case for ineffective assistance of counsel, we conclude there is no basis for reversal.

**{22}** "We review claims of ineffective assistance of counsel de novo." *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980. "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. "The record [on direct appeal] is frequently insufficient to establish whether an action taken by defense counsel was reasonable or if it caused prejudice." *Arrendondo*, 2012-NMSC-013, ¶ 38. Therefore, our Supreme Court has expressed a preference that "these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." *Id.*

### A. Conflicted Attorney Claim

**{23}** Defendant alleges that his trial attorney should have withdrawn as trial counsel because he previously represented one of the State's witnesses in a criminal case. We conclude that Defendant has not made a prima facie showing in this appeal.

**{24}** "The test for determining the existence of an actual conflict is whether counsel actively represented conflicting interests that adversely affected his performance." *State v. Santillanes*, 1990-NMCA-035, ¶ 7, 109 N.M. 781, 790 P.2d 1062 (internal quotation marks and citations omitted). Thus, an actual conflict occurs when "defense counsel ha[s] an ongoing professional relationship with [another individual that] preclude[s] his [effective] representation of [the d]efendant." *Rael v. Blair*, 2007-NMSC-006, ¶ 26, 141 N.M. 232, 153 P.3d 657.

**{25}** We are unable to determine, based on the record on appeal, whether defense counsel and the State's witness had an ongoing professional relationship that adversely affected counsel's performance. And Defendant has not identified, much less demonstrated, any specific deficiencies in counsel's performance tied to his previous

---

'placing' the gun somewhere." But we may not do so; our task is to measure the evidence against the given instruction, *Holt*, 2016-NMSC-011, ¶ 20, which was narrowly limited to the State's theory that Defendant "hid" the gun. Accordingly, precedents involving theories other than "hiding" have no bearing on our analysis. Those precedents include *State v. Sanchez*, 2015-NMCA-077, ¶ 23, 355 P.3d 51, on which our dissenting colleague relies even though the jury instruction in that case allowed a guilty verdict based on a finding that defendant "placed" the evidence. *See also State v. Radosevich*, 2016-NMCA-060, ¶ 29, 376 P.3d 871 (measuring evidence against instruction that asked whether the defendant hid or placed a knife), *rev'd on other grounds* by 2018-NMSC-028, ¶ 34, 419 P.3d 176. We offer no opinion on whether the evidence in Defendant's case would suffice under any theory other than "hiding."

representation of the State's witness. We therefore conclude that Defendant has not established a prima facie case for ineffective assistance of counsel based on an actual conflict by his attorney.

**B.      Other Ineffective Assistance of Counsel Claims**

**{26}**     Defendant argues "that his trial attorney provided other instances of ineffective assistance of counsel including failure to properly communicate with him, investigate his case, request a polygraph of witnesses, and file motions requested by [Defendant]." We again conclude that Defendant has not made a prima facie showing in this appeal.

**{27}**     We follow *Strickland v. Washington*, 466 U.S. 668 (1984), in evaluating claims of ineffective assistance of counsel. Under *Strickland*, a defendant must "show, first, that his [or her] counsel's performance was deficient and, second, that this deficiency prejudiced his [or her] defense." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. It is Defendant's burden "to establish each element." *Id.* "Trial counsel is generally presumed to have provided adequate assistance[, and a]n error only occurs if representation falls below an objective standard of reasonableness." *Bernal*, 2006-NMSC-050, ¶ 32 (alteration, internal quotation marks, and citation omitted). A claimed error that could "be justified as a trial tactic or strategy" will not be considered unreasonable. *Id.* Turning to the second prong, a claim of "generalized prejudice is insufficient[; i]nstead, a defendant must demonstrate that counsel's errors were so serious, such a failure of the adversarial process, that such errors undermine judicial confidence in the accuracy and reliability of the outcome." *Id.* (alteration, internal quotation marks, and citation omitted). "A defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted).

**{28}**     Defendant has not presented a prima facie case for ineffective assistance of counsel because "the record does not contain all the facts necessary for a full determination of the issue[.]" *Cordova*, 2014-NMCA-081, ¶ 8. Based on the record before us, we have no means to verify Defendant's assertions on appeal. "While we are willing to review matters of record for prima facie evidence of ineffective assistance of counsel, we will not afford the same benefit to arguments based on matters outside the trial record." *State v. Bahney*, 2012-NMCA-039, ¶ 49, 274 P.3d 134. Because "facts necessary to a full determination are not part of the record," Defendant's "ineffective assistance claim is more properly brought through a habeas corpus petition[.]" *State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068.

**CONCLUSION**

**{29}**     We affirm Defendant's conviction for aggravated battery with a deadly weapon and reverse his conviction for tampering with evidence. Although Defendant has not made a prima facie case of ineffective assistance of counsel, our opinion does not preclude Defendant from pursuing such claims through a petition for writ of habeas corpus.

**{30}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**I CONCUR**

**KRISTINA BOGARDUS, Judge**

**HANISEE, Chief Judge (dissenting in part and concurring in part).**

**HANISEE, Chief Judge (dissenting in part and concurring in part).**

**{31}**    While I concur in the majority's analysis affirming Defendant's conviction for aggravated battery with a deadly weapon, I respectfully dissent from reversal of Defendant's conviction for tampering with evidence. I view the latter conviction to rest soundly upon Defendant's act of throwing the gun he used to shoot Victim away from the crime scene sometime shortly after the shooting. In reaching its contrary conclusion, the majority over-parses the meaning of the word "hide"—defined by *Merriam-Webster* as to "put out of sight," a definition that to me comfortably covers this very circumstance—and impermissibly overrides the jury's typically respected fact-finding autonomy. Here, Defendant himself straightforwardly testified that he removed and threw critical evidence from the crime scene, evidence never to be seen again. It is a mistake to supplant the jury's determination that Defendant tampered with evidence with appellate jurists' hyper-technical construction of a simple English word.

**{32}**    Also troublingly, we have stated the opposite of what the majority today holds. *See State v. Sanchez*, 2015-NMCA-077, ¶ 19, 355 P.3d 51 ("Defendant's testimony describing having thrown the knife [used to stab the victim] from his vehicle satisfied the first element of tampering insofar as his act removed or concealed an item of evidence."). Although the jury in *Sanchez* was not instructed identically regarding the acts that constitute tampering; rather, it was told that tampering with evidence could be achieved by the defendant having "hid or placed the knife" that was tossed from the window, *id.* ¶ 23, this to me is a distinction without a difference. In my view, the majority is afoul of *Sanchez* in concluding, in essence, that evidence thrown by Defendant from the scene of a crime was not hidden, or "put out of sight," and that such an act undertaken in the aftermath of a crime is somehow immunized from liability when the jury is instructed only that tampering with evidence entails hiding it. Stated another way, even under the *Merriam-Webster* definition employed by the majority, it is not required that Defendant carefully, or capably, or even successfully (as turned out to be the case here) hid from all probing eyes the item of evidence he wished not to be found at a crime scene or on his person. Rather, under our precedent, he need only to have concealed it to a degree that permitted a jury entrusted with weighing facts in relation to the elements of the evidence tampering statute to determine guilt. *See Sutphin*, 1988-NMSC-031, ¶ 21 ("Where . . . a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal."). Having sensibly

concluded such to have here been the case, the jury's determination should not be disturbed on appeal.

**{33}** Defendant's conviction for tampering with evidence should be affirmed.

**J. MILES HANISEE, Chief Judge**